364 A.2d 932

**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**Robert LEVESQUE, Appellee.**

Supreme Court of Pennsylvania.

Argued May 4, 1976.

Decided Oct. 8, 1976.

120

Marion E. MacIntyre, 2nd Asst. Dist. Atty., Reid H. Weingarten, Harrisburg, for appellant.

Joshua D. Lock, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On April 19, 1975, an automobile operated by Robert Levesque struck a parked automobile in the City of Harrisburg. Observers called the Harrisburg Police and, within minutes, an officer of the Harrisburg Police Department responded. The officer initially spoke to two

youths who said they saw Levesque's automobile weave down the street immediately before the collision. The officer then proceeded to speak to Levesque who had stopped his automobile approximately one block away. Levesque, who was standing alongside his vehicle with the ignition and lights off, admitted that he was the operator of the vehicle but denied striking the parked automobile. The officer noticed a strong odor of alcohol on Levesque's breath. The officer then examined the parked automobile and found a piece of chrome strip matching Levesque's vehicle attached to the damaged portion of the parked vehicle. The officer then placed Levesque under arrest without a warrant for operating a vehicle while under the influence of intoxicating liquor.[1] Levesque was thereupon taken to City Hall where a written complaint specifying the offense and underlying facts was filed against him and a Mobatt test, which registered 0.213% alcohol in his blood, was administered.

Following denials of motions to suppress the evidence secured by the police "as a result of the unlawful arrest" and to quash the return of the District Justice, Levesque was convicted in a nonjury trial of driving while under the influence of intoxicating liquor. He was immediately sentenced to eighteen months probation and fined $250. However, later when ruling on a motion for a new trial, the court en banc of Dauphin County concluded a conflict existed between the Act of July 20, 1974, P.L. 522, No. 177, § 2, 75 P.S. § 1204 [Supp.1975–76] [2] and Pa.R.

1. Driving under the influence of intoxicating liquor is a misdemeanor. See Act of April 29, 1959, P.L. 58, § 1037, 75 P.S. § 1037.

2. The Act of July 20, 1974, P.L. 522, No. 177, § 2, 75 P.S. § 1204(a), effective immediately, amended the Act of April 29, 1959, P.L. 58, § 1204(a) by adding a sentence to the former, which sentence purports to a give peace officers the power to arrest without a warrant for violations of 75 P.S. § 1037 not committed within the view of the arresting officer. The amended section reads:
   "Peace officers, when in uniform and displaying a badge or other sign of authority, may arrest, upon view, any person violating

Crim.P. 101.[3]  Relying on Article V, Section 10(c) of the Pennsylvania Constitution,[4] the Court ruled that the conflict must be resolved in favor of the rule of criminal procedure.  On that basis, the court found the warrantless arrest in this case to be constitutionally defective and granted the motion for a new trial, stating that the pretrial motions to suppress evidence and to quash the

any of the provisions of this act, where the offense is designated a felony or a misdemeanor, or in cases causing or contributing to an accident resulting in injury or death to any person, and in all cases of arrest such peace officers shall forthwith make and file with the magistrate, before whom the arrested person is taken, a complaint setting forth in detail the offense, and at once furnish a copy thereof to the person arrested.  *A peace officer may, upon view or upon probable cause without a warrant, arrest any person violating section 1037 of this act in cases causing or contributing to an accident."*  [Emphasis added to indicate amendment.]

3.  Pa.R.Crim.P. 101 read, at the time of this incident:
"Criminal proceedings in court cases shall be instituted by:
1.  a written complaint; or
2.  an arrest without a warrant upon probable cause when the offense is a felony: or
3.  an arrest without a warrant when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest."
The Rule was subsequently amended, effective September 1, 1975 to include:
"4.  an arrest without a warrant upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute."

4.  Article V, § 10(c) of the Pennsylvania Constitution reads:
"The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose.  All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."

District Justice's return should have been granted. The Commonwealth filed an appeal in this Court.[5]

Prior to July 20, 1974, it was beyond question that a peace officer could not effect a valid warrantless arrest for a violation of 75 P.S. § 1037, or any other misdemeanor, unless the offense was committed within his presence. *Commonwealth v. Brown*, 225 Pa.Super. 289, 302 A.2d 475 (1973); *Commonwealth v. Revees*, 223 Pa. Super. 51, 297 A.2d 142 (1972). However, then Judge Packel in his concurring opinion in *Commonwealth v. Revees*, supra, urged a change by the Legislature, along with an appropriate revision of the criminal rules by the Supreme Court, so that warrantless arrests for driving under the influence of intoxicating liquor or drugs could be effected whether or not the offense was committed within the view of the arresting officer.

The Legislature responded by amending 75 P.S. § 1204(a), effective July 20, 1974, by adding the following sentence:

> "A peace officer may, upon view or upon probable cause without a warrant, arrest any person violating section 1037 of this act in cases causing or contributing to an accident."

Thus, the Legislature purported to give police officers the authority to perform warrantless arrests for driving under the influence of liquor or drugs, 75 P.S. § 1037, whether or not that offense was committed in the presence of the arresting officer.

However, Judge Packel's exhortation for a change in the Rules of Criminal Procedure was not as promptly an-

---

5. Jurisdiction is based on Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202 [Supp.1975–76] which provides, *inter alia*:
"The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following classes of cases: * * * *
(9) Matters where the court of common pleas has held invalid as repugnant . . . to the Constitution of this Commonwealth, . . . any act of Assembly of, this Commonwealth . . . ."

swered. Rule 101 was amended to include, as a method of instituting proceedings in a criminal court case,[6] a warrantless arrest for a misdemeanor not committed within the presence of the arresting officer when such an arrest is specifically authorized by statute. However, that amendment was not made effective until September 1, 1975, some four months after Levesque was arrested without a warrant.

An exacerbating factor for the trial court in analyzing this question was found in Pa.R.Crim.P. 159. That rule, entitled "Suspension of Acts of Assembly—Chapters 50 and 100," suspended the Act of April 29, 1959, P.L. 58, § 1204(a), 75 P.S. § 1204(a), in so far as it is inconsistent with Rules 51 and 101.

■ The trial court read 75 P.S. § 1204(a), as amended, as a legislative grant of authority to peace officers of the Commonwealth to arrest for violations of § 1037 of the Vehicle Code without a warrant even when such a violation is not committed within the presence of the arresting officer. See *Miles v. Commonwealth, Department of Transportation, Bureau of Traffic Safety*, 8 Pa. Cmwlth. 544, 304 A.2d 704 (1973); *Commonwealth v. Pincavitch*, 206 Pa.Super. 539, 214 A.2d 280 (1965). However, the trial court read Rule 101 as proscribing a warrantless arrest for a misdemeanor not committed within the view of the arresting officer and found the statute and the rule to be in direct conflict. Therefore, the question before this Court is the effect of the legislative amendment of 75 P.S. § 1204(a) during the fifteen months prior to the amendment of Rule 101, during which period Levesque was arrested, and the resolution of the conflict, if any, between the rule and the statute.

Initially, we note that Pa.R.Crim.P. 101 was renumbered and made re-effective on January 1, 1974. At that

6. Court case, within the meaning of the Rules of Criminal Procedure, is defined by Pa.R.Crim.P. 3(e) as a case in which the issuing authority cannot exercise summary jurisdiction.

time, it was beyond question that a warrantless arrest for a misdemeanor, including a violation of 75 P.S. § 1037, not committed within the view of the arresting officer was illegal in Pennsylvania. Therefore, when Rule 101 was promulgated, a warrantless arrest for a misdemeanor not committed within the view of the arresting officer was not within the contemplation of the rule. Accordingly, Rule 101 cannot be interpreted to control the instant fact situation. See *Commonwealth v. Wasserman*, 466 Pa. 430, 353 A.2d 430 (1976).

Secondly, it is important, when considering the interplay between Rule 101 and 75 P.S. 1204(a), that Pa.R. Crim.P. 159 suspended the prior 75 P.S. § 1204(a) only in so far as it was inconsistent with Rules 51 and 101 and did not speak at all to the amended 75 P.S. § 1204(a). Rules 51 and 101 prescribe the means of instituting criminal processes only and neither discusses nor concerns the legality of arrests. Indeed, the comment to Rule 101 indicates that the former 75 P.S. § 1204(a) was suspended only in so far as it referred to the process of notification to a defendant of the charges filed against him under the Vehicle Code; that is, the former information process. Accordingly, the legislative grant of power to peace officers to arrest for violations of the Vehicle Code contained in the former 75 P.S. § 1204(a) and, necessarily, those additional powers of arrest contained in the amended 75 P.S. § 1204(a) were not affected.

From the foregoing, it is clear that Pa.R.Crim.P. 101 does not speak to the validity of arrests under the Vehicle Code but only to the initiation of proceedings in court cases. Therefore, as to the legality of arrests in general, or as to the power of a peace officer to effect this particular arrest, there is no conflict between the Rule and the statute. The statute controls the grant of arrest power, and the rule, as far as its contemplation at the time, governs the means of instituting proceedings. Accordingly, Rule 101, in itself, does not render an arrest constitutionally defective or otherwise illegal.

However, since Rule 101, as effective at the time of Levesque's arrest, did not contemplate the initiation of proceedings by an arrest for a misdemeanor not within the view of the arresting officer but which arrest was specifically authorized by statute, there was no clearly defined or conclusive means to initiate process following an arrest made pursuant to 75 P.S. § 1204(a), as amended, until September 1, 1975, the effective date of the amendment of Rule 101. Accordingly, we must examine the procedure used in this case to determine its propriety. *Commonwealth v. Wasserman*, supra.

It is important in this analysis to consider that this Court, in promulgating a rule of criminal procedure which contemplated the legislative amendment to 75 P.S. § 1204(a), set the warrantless arrest as the point where proceedings are instituted against a defendant who is arrested and charged with a violation of 75 P.S. § 1037 in cases causing or contributing to an accident. See Pa.R. Crim.P. 101(4). In effect, this Court, once it considered the legislative amendment, promulgated a rule of criminal procedure which mandated a procedure identical to that used in this case. Further, the former Rule 101 mandated the initiation of proceedings against a defendant at either the point where a criminal complaint is filed in cases where the filing of a complaint preceded the arrest or at the time of arrest in cases where a warrantless arrest preceded the filing of a criminal complaint. The purpose underlying such a rule was undoubtedly to afford to a defendant at the earliest possible moment in his confrontation with the authorities those protections afforded the accused which are the hallmark of our criminal justice system.[7] The instant procedure,

7. In amending Rule 101 by adding 101(4), this Court simply acknowledged the legislative amendment of 75 P.S. § 1204(a) and in no way expanded or contracted the rights of a defendant. Nor did this Court alter the purpose of the former rule to require the protections of the accused to attach at the earliest possible moment. See Comment, Pa.R.Crim.P. 101 as amended.

arrest and contemporaneous notice that the arrest was for driving while under the influence of intoxicating liquor, substantially complied with the purpose underlying the former Rule 101 by setting the institution of proceedings against Levesque at his arrest and attaching the protections of the criminal justice system at the earliest possible moment in his confrontation with authorities. Both since the instant procedure used to institute proceedings against Levesque was identical to the procedure mandated by this Court once this Court considered the legislative amendment to 75 P.S. § 1204(a) by promulgating the amended Rule 101 and since the procedure used instantly substantially complied with the former Rule 101 by affording Levesque the protections of the criminal justice system at the earliest possible moment in his confrontation with the authorities, we can find no reason or purpose to condemn the procedure used in this case. The procedure used instantly does not affect any constitutional right of the accused nor would it be wise to deter practices which comport with the rules of this Court. Therefore, neither the arrest nor the procedure of instituting proceedings against Levesque may serve as the basis of a suppression of evidence instantly.

The remaining issue is whether the arresting officer had probable cause sufficient to effectuate the instant arrest. Probable cause exists if "the facts and circumstances which are within the knowledge of the officer at the time of arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Culmer*, 463 Pa. 189, 344 A.2d 487, 490 (1975). Here, the arresting officer interviewed two witnesses who described Levesque's automobile as weaving as he drove it down the street before it struck a parked car. He also smelled a strong odor of alcohol on his breath and observed a general lack of co-ordination in Lev-

esque's movements. A chrome strip matching Levesque's vehicle was found impaled on the parked vehicle. Finally, Levesque admitted that he was the operator of the vehicle. We believe, although he did not see the actual offense, the arresting officer had sufficient probable cause to believe that a violation of 75 P.S. § 1037 had taken place.

Accordingly, the order of the trial court granting a new trial is reversed and the record is remanded for execution of sentence.

ROBERTS, NIX and MANDERINO, JJ., concur in the result.