372 A.2d 850

COMMONWEALTH of Pennsylvania, Appellant,

v.

Carl MEYER, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 16, 1976.

Decided March 31, 1977.

John M. Eakin, Mechanicsburg, with him Edgar B. Bayley, District Attorney, Camp Hill, for appellant.

John B. Mancke, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal by the Commonwealth from an order granting appellee's motion for suppression of evidence in a prosecution for driving under the influence of alcohol.[1]  Although the issue was not raised by either party in the briefs or at oral argument, we note that the Supreme Court has exclusive jurisdiction of this case.  Accordingly, we shall transfer it to that court.[2]

On December 30, 1974, at approximately 3:00 a. m., an officer of the Carlisle Police Department came upon the scene of an accident on Interstate 81.  An automobile was resting on top of the guardrail that served as a median barrier between the northbound and southbound lanes.  A truck driver had stopped and was placing flares to warn other motorists.  Appellee was a few feet from the automobile.  After satisfying himself that appellee was uninjured,

1.  Act of April 29, 1959, P.L. 58, § 1037, 75 Pa.C.S. § 1037.

2.  Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503(b), 17 Pa.C.S. § 211.503(b).

the officer radioed his headquarters to summon the State Police. Apparently the scene of the accident was within their jurisdiction. When two state troopers arrived, the officer told one of them that he had a "possible 1037" (a reference to the section of the Vehicle Code that prohibits driving under the influence of alcohol; *see* footnote 1, *supra*). The trooper observed that appellee walked with a staggering gait, was disheveled in appearance, and had a glassy look in his eyes and an odor of alcohol on his breath. After asking for and receiving appellee's driver's license and registration card, the trooper asked appellee, "What happened?". In response, appellee made an incriminating statement. Appellee was then placed under arrest by the trooper and was advised of his *Miranda* rights. After his arrest appellee made other incriminating statements and voluntarily submitted to a breathalyzer test, the results of which were also incriminating.

Appellee was tried twice on a charge of driving under the influence; both times he was found guilty by a jury, and both times, as a result of post-verdict motions, he was granted a new trial. Before his third trial appellee filed a motion for the suppression of his pre-arrest statement to the State Police, and also for the suppression of his post-arrest statements and the results of the breathalyzer test. The lower court granted the motion, and the Commonwealth took this appeal.

The lower court suppressed the pre-arrest and post-arrest evidence for different reasons.

Appellee's pre-arrest statement was suppressed because it was made before the trooper had informed appellee of his constitutional rights, as required by *Miranda*. The court found that before asking appellee, "What happened?", the trooper had sufficient information to warrant the belief that appellee had committed a crime. Therefore, the court reasoned, the trooper was engaged in a criminal investigation that had "focused" on appellee, and he should have informed appellee of his constitutional rights.

The post-arrest evidence was suppressed on the ground that it was the result of an unlawful arrest. The court concluded that since the trooper did not see appellee driving, he was precluded by Rule 101 of the Pennsylvania Rules of Criminal Procedure from arresting appellee without a warrant.[3] The Commonwealth contended that the arrest was lawful under the Act of July 20, 1974, P.L. 522, No. 177, § 2; 75 Pa.C.S. § 1204(a) (1976 Supp.), which provides that a police officer may arrest a person for driving under the influence, even though he has not seen the person driving and does not have a warrant, if the case is one "causing or contributing to an accident."[4] The court rejected this contention, however, because it considered that the Act of July 20, 1974, was inconsistent with, and therefore had to yield to, Rule 101.[5]

3. At the time of appellee's arrest Pa.R.Crim.P. 101 read:

Criminal proceedings in court cases shall be instituted by:
1. a written complaint; or
2. an arrest without a warrant when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest; or
3. an arrest without a warrant upon probable cause when the offense is a felony.

4. The Act of July 20, 1974, amended the Act of April 29, 1959, P.L. 58, § 1204(a) by adding one sentence:

Peace Officers, when in uniform and displaying a badge or other sign of authority, may arrest, upon view, any person violating any of the provisions of this act, where the offense is designated a felony or a misdemeanor, or in cases causing or contributing to an accident resulting in injury or death to any person, and in all cases of arrest such peace officers shall forthwith make and file with the magistrate, before whom the arrested person is taken, a complaint setting forth in detail the offense, and at once furnish a copy thereof to the person arrested. *A peace officer may, upon view or upon probable cause without a warrant, arrest any person violating section 1037 of this act in cases causing or contributing to an accident.* (Emphasis indicates added sentence.)

5. Effective September 1, 1975, Rule 101 was amended to provide, *inter alia*, the following:

4. an arrest without a warrant upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute [e. g., the Act of July 20, 1974].

Whether there was any inconsistency between Rule 101 and the Act of July 20, 1974, has recently been decided by the Pennsylvania Supreme Court in *Commonwealth v. Levesque*, 469 Pa. 118, 364 A.2d 932 (filed October 8, 1976.)[6] However, since we are without jurisdiction, we are not empowered to apply that decision in this case.

Section 202[7] of the Appellate Court Jurisdiction Act of 1970 provides:

> The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following classes of cases:
>
> .   .   .   .   .
>
> (9) Matters where the court of common pleas has held invalid as repugnant to the  .  .  .  Constitution of the Commonwealth  .  .  .  any act of Assembly of this Commonwealth  .  .  .  .

Although done in a circuitous manner, which it will take a little time to explain, the lower court held that the Act of July 20, 1974, is repugnant to the Constitution.

In his opinion for the lower court, President Judge SHUGHART concluded that appellee's arrest was unlawful under Rule 101, but he did not set out his reasoning. Rather, he "concur[red] in the conclusion of Judge WEIDNER in his opinion filed in this case on October 14, 1975." Opinion of President Judge SHUGHART at 4–5. Judge WEIDNER, in his opinion, which was filed after a suppression hearing before appellee's first trial, also concluded that the arrest was unlawful under Rule 101, but he too did not set out his reasoning, instead citing the reasons stated by President Judge SHUGHART in his opinion in *Commonwealth v.*

Thus any inconsistency between Rule 101 and the Act of July 20, 1974, was eliminated.

6.   According to the Supreme Court, there never was an inconsistency between the Act and the Rule. Thus in *Levesque* the Court stated that "[the Rule] does not speak to the validity of arrests  .  .  . but only to the initiation of proceedings in court cases." 469 Pa. at 125, 364 A.2d at 936.

7.   Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 Pa.C.S. § 211.202 (1976 Supp.).

*Smith,* 26 Cumb.L.J. 134 (C.P.1975). Opinion of Judge WEIDNER at 4-5. In *Smith,* President Judge SHUGHART concluded that during the interval between passage of the Act of July 20, 1974, and amendment of Rule 101, effective September 1, 1975,[8] the Act and the Rule were in conflict. He resolved this perceived conflict by deferring to the Rule, citing the opinions of President Judge GATES in *Commonwealth v. Marcozzi,* 15 Lebanon L.J. 145 (1975), and *Commonwealth v. Bennetch,* 15 Lebanon L.J. 151 (1975). In *Marcozzi,* President Judge GATES also perceived a conflict between the Act and the Rule, and found the Rule controlling. He interpreted Article V, section 10(c), of the Pennsylvania Constitution to require the suspension of the Act. That section of the Constitution provides:

> The Supreme Court shall have the power to prescribe general rules governing the practice, procedure, and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders. . . . All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

President Judge GATES held that although the Rule was promulgated before the Act, until the Rule was amended to take the Act into account, the Rule and the Act were inconsistent. Therefore, he found the Act to be unconstitutional:

> Thus it is clear that the procedure providing for a warrantless arrest in the amended Section 1204(a) [*i. e.,* provided by the Act of July 20, 1974] is *unconstitutional.* Such an arrest cannot be held valid until the Supreme Court alters its rules to allow for a warrantless arrest for a misdemeanor as provided in Pa.R.Crim.P. 101(2) for a felony, or until the legislature makes violation of Section 1037 of the Motor Vehicle Code a felony.
>
> *Commonwealth v. Marcozzi,* 15 Lebanon L.J. at 149 (emphasis added).

Since President Judge SHUGHART, in his opinion in the instant case, relied on the reasoning of *Marcozzi,* we must

8. *See* footnote 5, *supra.*

conclude, although he does not say so in so many words, that he found the Act "invalid as repugnant to the . . . Constitution of the Commonwealth." That being the case, the appeal from his decision must be not to this court but to the Supreme Court.

The correctness of this conclusion is confirmed by the opinion of the Supreme Court in *Commonwealth v. Levesque, supra.* There, the Court of Common Pleas of Dauphin County, sitting en banc, found a conflict between Rule 101 and the Act of July 20, 1974, and, relying on Article V, section 10(c), of the Pennsylvania Constitution, held that the conflict had to be resolved in favor of the Rule, and ordered the evidence suppressed. The Commonwealth appealed, not, as here, to this court but to the Supreme Court. In accepting the appeal, the Supreme Court cited Section 202 of the Appellate Court Jurisdiction Act, *supra,* quoting the grant to the Court of "exclusive jurisdiction" of appeals "where the court of common pleas has held invalid as repugnant . . to the Constitution of this Commonwealth . . . any act of Assembly . . . ." *Commonwealth v. Levesque,* 469 Pa. at 123, n. 5, 364 A.2d at 934, n. 5.

Accordingly, the appeal in this case is transferred to the Supreme Court.

VAN der VOORT, J., files a dissenting opinion in which WATKINS, President Judge, and PRICE, J., join.

VAN der VOORT, Judge, dissenting:

I respectfully dissent from the decision of the Majority to transfer this case to the Supreme Court of Pennsylvania (Supreme Court) for the reason that I find that the Supreme Court has already decided that in so far as the power to arrest is concerned there is no conflict between Pa.R.Crim.P. 101 (Rule) and the Act of July 20, 1974, P.L. 522, No. 177, § 2 amending the Act of April 29, 1959, P.L. 58, § 1204(a); 75 Pa.C.S. § 1204(a) (the Act), and consequently there is no constitutional issue involved in the instant case that has not already been decided by the Supreme Court. *Commonwealth v. Levesque,* 469 Pa. 118, 364 A.2d 932 (1976). The

Majority of our own Court concedes that the Supreme Court has held that there is no such inconsistency between the Rule and the Act[1] but nevertheless finds that because of this "conflict" an interpretation of Article V, § 10(c) of the Pennsylvania Constitution (the Constitution) is still unresolved.

In *Levesque, supra,* the Supreme Court determined the facts to be as follows:

"On April 19, 1975, an automobile operated by Robert Levesque struck a parked automobile in the City of Harrisburg. Observers called the Harrisburg Police and, within minutes, an officer of the Harrisburg Police Department responded. The officer initially spoke to two youths who said they saw Levesque's automobile weave down the street immediately before the collision. The officer then proceeded to speak to Levesque who had stopped his automobile approximately one block away. Levesque, who was standing alongside his vehicle with the ignition and lights off, admitted that he was the operator of the vehicle but denied striking the parked automobile. The officer noticed a strong odor of alcohol on Levesque's breath. The officer then examined the parked automobile and found a piece of chrome strip matching Levesque's vehicle attached to the damaged portion of the parked vehicle. The officer then placed Levesque under arrest without a warrant for operating a vehicle while under the influence of intoxicating liquor.[1] Levesque was thereupon

    [1] Driving under the influence of intoxicating liquor is a misdemeanor. See Act of April 29, 1959, P.L. 58, § 1037, 75 P.S. § 1037.

taken to City Hall where a written complaint specifying the offense and underlying facts was filed against him and a Mobatt test, which registered 0.213% alcohol in his blood, was administered."

Levesque appealed the denials of his motions to suppress evidence which he claimed was secured by police "as a result of the unlawful arrest." The lower court held that the Act was unconstitutional, that it was in conflict with the Rule

1. Footnote 6 of the Majority Opinion.

and that the rule prevailed under the Constitution. The Supreme Court reversed, holding that in so far as the power to arrest is concerned, there is no conflict between the Rule and the Act and that the Act is Constitutional.

In the instant case the Majority determines the facts to be as follows:

"On December 30, 1974, at approximately 3:00 a. m., an officer of the Carlisle Police Department came upon the scene of an accident on Interstate 81. An automobile was resting on top of the guard rail that served as a median barrier between the northbound and southbound lanes. A truck driver had stopped and was placing flares to warn other motorists. Appellee was a few feet from the automobile. After satisfying himself that appellee was uninjured, the officer radioed his headquarters to summon the State Police. Apparently the scene of the accident was within their jurisdiction. When two state troopers arrived, the officer told one of them that he had a 'possible 1037' (a reference to the section of the Vehicle Code that prohibits driving under the influence of alcohol; . . . The trooper observed that appellee walked with a staggering gait, was disheveled in appearance, and had a glassy look in his eyes and an odor of alcohol on his breath. After asking for and receiving appellee's driver's license and registration card, the trooper asked appellee, 'What happened?'. In response, appellee made an incriminating statement. Appellee was then placed under arrest by the trooper and was advised of his *Miranda* rights. After his arrest appellee made other incriminating statements and voluntarily submitted to a breathalyzer test, the results of which were also incriminating."

Defendant Meyer (before his third trial) filed a motion to suppress his pre-arrest statements to the police because of alleged untimely *Miranda* warnings and his post-arrest statements and the breathalyzer test because they resulted from an unlawful arrest. We are concerned at this time with only the alleged unlawful arrest.

There is no question that the Supreme Court has exclusive jurisdiction in cases where a court of Common Pleas has held an act to be unconstitutional. The Appellate Court Jurisdiction Act of 1970, section 202 provides:

"The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following classes of cases:

. . . . .

(9) Matters where the court of common pleas has held invalid as repugnant to the . . . Constitution of the Commonwealth . . . any act of Assembly of this Commonwealth . . . ."

In *Levesque* the Supreme Court exercised its jurisdiction and not only held the Act constitutional but also held that there is no conflict between the Act and the Constitution. We have instantly the identical legal situation.[2] Once it has been determined that in this situation there is no constitutional issue we have jurisdiction and the first obligation to decide the matter. The issues in this case are two, (1) the propriety of the arrest and (2) the timeliness of the *Miranda* warnings. I believe we should proceed to make the required decisions and should not transfer the case to the Supreme Court.

WATKINS, President Judge, and PRICE, J., join in this dissenting opinion.

---

[2] The court below did not actually write that the Act is unconstitutional. President Judge SHUGHART held that the arrest was unlawful under Rule 101. He gave as his reason his reliance on the conclusion of Judge WEIDNER in an earlier opinion in this case. Judge WEIDNER in his earlier opinion relied on a still earlier opinion of President Judge SHUGHART which is reported in *Commonwealth v. Smith*, 26 Cumb.L.J. 134 (C.P.1975). President Judge SHUGHART in *Smith* relied on *Commonwealth v. Marcozzi*, 15 Lebanon L.J. 145 (1975) in which Judge GATES found the Act unconstitutional.