389 A.2d 1113

**COMMONWEALTH of Pennsylvania**

v.

**Douglas REYNOLDS, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1977.

Decided July 12, 1978.

262

Bruce W. Miller, Philadelphia, for appellant.

Randolph L. Goldman, Assistant District Attorney, with him F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant raises several contentions for our review, including *inter alia*, that the trial court erred in imposing more than one sentence on a single, unlawful act. We agree with this argument, and we reverse and remand for resentencing.

On June 21, 1976, a Philadelphia police officer arrested appellant and charged him with driving while under the influence of an intoxicating beverage,[1] involuntary manslaughter,[2] and recklessly endangering another person.[3] On

1. The Vehicle Code, Act of April 29, 1959, P.L. 58; 75 P.S. § 1037. Repealed by Act of June 17, 1976, P.L. 162, No. 81, § 7, eff. July 1, 1977.

2. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 2504.

3. The Crimes Code, supra; 18 Pa.C.S. § 2705.

November 17, 1976, appellant filed a motion to suppress and, after a hearing, the lower court denied it. On January 24, 1977, a jury trial commenced[4] and the following factual pattern emerged. Ms. Geraldine Bell, a resident of 2561 North 30th Street, Philadelphia, testified that on June 21, 1976, she was at her home looking out the window. She observed a 1970 blue and white cadillac turn left from Huntingdon Street onto 30th Street[5] and collide with her car which was parked in front of her home. She ran out of her home and yelled at appellant who was driving the cadillac. He responded by stating, "Lady, I'm not going anywhere." Seconds later he backed his car up a few feet, then went forward, and again struck Ms. Bell's car. Appellant immediately reversed his car again, then went forward and collided with a car parked in front of Ms. Bell's car. Finally, appellant straightened his car and drove south on 30th Street.

James Fairfax, a resident of 2555 North 30th Street testified that he looked out his window at about 9:30 on the night in question and saw appellant's car smash into his car which was parked in front of Ms. Bell's vehicle. He ran into the street and observed the cadillac for 5 or 6 seconds as it travelled down 30th Street. Mr. Fairfax estimated the vehicle's speed at 50 or 60 miles per hour. Another eyewitness, Mr. Gray, estimated appellant's speed at about 60 or 70 miles per hour.[6]

Appellant continued on 30th Street through intersections with Cumberland Street and York Street without stopping at either stop sign. Just south of York Street appellant's

4. Following a trial in the Municipal Court of Philadelphia, the court found appellant guilty of all offenses charged herein. An appeal was filed to the Court of Common Pleas of Philadelphia County; a trial de novo was conducted.

5. Thirtieth Street is one way southbound; it is 26 feet wide and has a speed limit of 25 miles per hour. Cars were parked on both sides of the road on June 21, 1976.

6. Gray also testified that he pulled appellant out of the car after the accident and saw a partially filled, half pint bottle of vodka fall from appellant's pocket.

car jumped the curb, crashed into 2338 N. 30th St., and completely demolished the steps of the property. Three women were seated on those steps prior to the crash. The impact resulted in the death of two women and in serious injury to the third, the owner of the house.

Philadelphia police officer Burke arrived at the scene within moments of the collision. Seeing that the car was beginning to burn, Burke ran over to appellant, and asked whether anyone else was in the car. Appellant was lying in the street; he responded that he had been alone in the vehicle. Burke stated that appellant's eyes were glassy; he reeked of alcohol; and his speech was slurred. As an emergency crew removed appellant from the scene, Burke told them appellant was under arrest for drunk driving.

Lt. Geisz of the accident investigation unit of the Philadelphia police department, proceeded from the scene to Women's Medical College where he observed appellant. Lt. Geisz stated that appellant's eyes were very bloodshot, there was an extremely strong odor of alcohol emanating from him, his speech was slurred, and his face was puffy. Based upon these facts, Lt. Geisz concluded that appellant was intoxicated and incapable of operating a motor vehicle. Lt. Geisz informed appellant of his rights pursuant to the Vehicle Code [7] and requested that he consent to a blood test. Appellant agreed, signed a consent form, and a doctor extracted blood at about 10:45 p. m. The chemist who analyzed the blood, Joseph McBride, testified that appellant had a blood alcohol level of .25.

A few hours later, appellant was transferred to the police administration building. While there, officer Boone warned appellant of his rights pursuant to the Vehicle Code and requested that appellant consent to a breathalyzer test. Appellant agreed to the test and Boone administered it at about 2:40 A.M. The results showed appellant to have a .15 blood alcohol level. Subsequently, at about 2:45 A.M., a police surgeon, Dr. Joseph Rogers, examined appellant and performed several coordination tests all of which appellant

7. The Vehicle Code, supra; 75 P.S. § 624.1.

failed. Dr. Rogers stated that in his opinion appellant was under the influence of alcohol.[8]

In his defense, appellant testified that on June 21, 1976, between 6 p. m., and 9 p. m., he consumed four alcoholic beverages, each contained one shot of vodka. On his way home a little after 9 p. m., he turned south onto 30th Street and saw a child chase a ball into the street. Appellant swerved left, struck a parked car, and bumped his forehead on the left window. Because he experienced great pain from the blow, he drove off to obtain aid. He remembered nothing else until he awoke at the hospital.

The jury found appellant guilty of all charges. Following the denial of post-verdict motions, the court sentenced appellant to 2½ to 5 years' imprisonment on one count of involuntary manslaughter, 2½ to 5 years' imprisonment on the charge of recklessly endangering another person, and to 1 to 2 years' imprisonment on the charge of driving under the influence; all to run consecutively.[9] This appeal followed.

Appellant contends that the court erred in failing to suppress the results of his blood and breathalyzer tests. First, he contends that there was no probable cause to arrest him and, therefore, the warrantless search was not incident to a lawful arrest. Appellant concedes that § 1204 of the Vehicle Code [10] authorizes a police officer to make a war-

8. Several other witnesses testified for the Commonwealth including Mrs. Chambers, one of the victims and the owner of the house; officer Foell of the Aid unit; officer Veal of the emergency squad; Fireman Schweiger; and Dr. Halbert Filinger, a forensic pathologist. Dr. Filinger testified that one must consume 10 shots of 100 proof whiskey or 10 beers in order to achieve a blood alcohol reading of .25.

9. Originally the court also imposed a sentence on the second charge of involuntary manslaughter, indictment number 2059. The record reveals that on May 20, 1977, the court vacated this judgment of sentence pursuant to *Commonwealth v. Speelman*, 235 Pa.Super. 109, 341 A.2d 138 (1975).

10. Section 1204 provides, in pertinent part:
 ". . . A peace officer may, upon view or upon probable cause without a warrant, arrest any person violating section 1037 of this act in cases causing or contributing to an accident."

rantless arrest of any person violating § 1037 of the Vehicle Code,[11] upon probable cause, in cases causing or contributing to an accident, even though the officer did not view the offense. Appellant alleges that the officer did not have a sufficient factual basis upon which to effect an arrest. The test for probable cause to arrest is "whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator." *Commonwealth v. Trefry,* 249 Pa.Super. 117, 375, A.2d 786 (1977). In *Commonwealth v. Levesque,* 469 Pa. 118, 364, A.2d 932 (1976), the Supreme Court held that probable cause to arrest existed when the arresting officer, reporting to the scene of a collision, smelled the odor of alcohol on the suspect's breath, observed his general lack of coordination, and heard the suspect's admission that he was the driver.

■ The instant case is almost factually identical to *Levesque,* supra. Burke arrived on the scene almost immediately and observed that a serious accident had occurred. Bystanders directed him to appellant who admitted to being the sole occupant of the wrecked vehicle. Burke testified at the suppression hearing that appellant's eyes were glassy, that he reeked of alcohol, and that his speech was slurred. These facts provided probable cause for the officer to arrest appellant for driving under the influence of an intoxicant.

■ Second, appellant argues that the court erred in failing to suppress the tests because the police failed to warn him that the results could be used against him in a manslaughter prosecution. Appellant maintains that the warning is required by constitutional considerations. We dealt with this contention in *Commonwealth v. Rutan,* 229 Pa.Super. 400, 403–404, 323 A.2d 730, 732 (1974) and stated:

11. Section 1037 of the Vehicle Code provides, in pertinent part:
 "It shall be unlawful for any person to operate a motor vehicle, tractor, streetcar or trackless trolley omnibus, while under the influence of intoxicating liquor or any narcotic drug or habit producing drug . . . .."

"Neither the Fourth Amendment ban against unreasonable searches and seizures nor the Fifth Amendment privilege against self-incrimination prevents the Commonwealth from requiring that a driver submit to a breathalyzer test. . . . A driver therefore does not have a constitutional right to refuse. . . . Neither the Fourth nor Fifth Amendments prevents the admission into evidence of test results or of refusal. Since a driver has no constitutional right to refuse and no right to have evidence either of the test results or of the refusal excluded, we do not see how the Constitution requires that he be given warnings as to his lack of rights." Moreover, because blood samples and breathalyzer tests are not testimonial evidence, they come under the protection of the fourth, not the fifth, amendment. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Therefore, no *Miranda* warnings are required.

In the case at bar, both officer Geisz and officer Boone informed appellant of his rights under the Vehicle Code.[12] This was sufficient to apprise appellant of his limited rights with respect to the blood and breathalyzer tests.

Third, appellant alleges that he was too drunk to consent voluntarily to the tests.[13] The question whether

12. Each officer essentially informed appellant: "You have been placed under arrest and charged with the operation of a motor vehicle while under the influence of intoxicating liquor, and you are requested to submit to a chemical test of your breath to determine intoxication.

"If you are unable to perform the breath test, or if you prefer that a blood test be given, you are requested to submit to same.

"If you refuse to do so, the test shall not be given but the Secretary may suspend your license or permit to operate a motor vehicle with or without a hearing.

"If your license or permit to operate a motor vehicle is suspended under the provisions of this Act, you shall have the same right to appeal as provided for in cases of suspension for other reasons."

13. In *Commonwealth v. Funk*, 254 Pa.Super. 233, 385 A.2d 995 (1978), an appellant presented a similar claim to our Court. In *Funk* we stated: "We have concluded, however, that it is consistent with the aims of the legislature and the structure of the statute to hold that the police officers acted lawfully in taking the blood test, even assuming, as we do, that appellant was not conscious enough to avail

consent to a search is, in fact, voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from all circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Curtis,* 253 Pa.Super. 163, 384 A.2d 1280 (1978); *Commonwealth v. Watkins,* 236 Pa.Super. 397, 344 A.2d 678 (1975); *Commonwealth v. Kelly,* 235 Pa.Super. 299, 341 A.2d 141 (1975). Additionally, when the prosecution seeks to rely upon a defendant's consent, it has the burden of proving that the consent was, in fact, freely given. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). On appeal, we are bound by the suppression court's findings of fact if they are supported by the record. *Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Wright,* 474 Pa. 92, 376 A.2d 988 (1977).

In the case at bar, both Lt. Geisz and officer Boone testified about the circumstances preceding the administration of the tests. Geisz stated that he explained appellant's rights under the Vehicle Code, that appellant was conscious and alert, that appellant had only minor injuries, and that appellant freely signed the consent form to permit the extraction of his blood. Officer Boone testified that he first came in contact with appellant about 2:15 a. m. on June 22, 1976 in the Police Administration building. Officer Boone informed appellant of his rights under the Vehicle Code and

himself of his opportunity to refuse the test and accept the consequences. . . .

"As the law now stands, no matter which alternative a driver chooses, there will be an evidentiary result: either there will be the result of a test, or there will be a fact, refusal, to be taken into account in deciding guilt or innocence. However, if we held that *no* test may be taken on someone who is incapable of an intelligent choice, an inconsistency would appear, because there would be no evidentiary result: there would be no test result, and certainly no inference could be drawn from an unconscious person's 'refusal' to take a test. Thus the Commonwealth would be left with nothing. It is more reasonable to say, and we hold, that under such circumstances as are presented here a test *may* be taken." Supra, 254 Pa.Super. at 240–241, 385 A.2d at 999. Thus, under *Funk,* even if we held that appellant's consent was not knowing and voluntary, we would still uphold the validity of the test.

requested appellant's consent to a breathalyzer test. Appellant agreed to the test and cooperated in its administration. Appellant testified that he was in great pain after the accident. He had no recollection of consenting to or undergoing a blood test although he did remember the breathalyzer. Appellant stated that he was not informed of his rights prior to the test. The suppression court specifically found that appellant consented to the administration of both the blood and breathalyzer tests. The court further stated that appellant was not a credible witness.

We believe that the record adequately supports the trial court's finding of voluntary consent. All of the credible testimony presented by the Commonwealth shows that appellant was sufficiently alert and cognizant of his surroundings to agree freely to the tests. Moreover, the suppression court assessed appellant's credibility unfavorably and we will not disturb that finding on appeal. Consequently, the lower court did not err in failing to suppress either the blood or breathalyzer tests.

Appellant contends that the court erred in permitting two witnesses to render their opinions on the speed at which appellant's vehicle was traveling just prior to the collision. Appellant argues that neither witness had an adequate opportunity to observe appellant's vehicle in order to form an opinion as to its speed. Pennsylvania case law establishes that lay people are competent to express an opinion as to the speed a vehicle is traveling. *Commonwealth v. Forrey*, 172 Pa.Super. 65, 92 A.2d 233 (1952). In order to establish a basis for the admission of such evidence a party must show that the witness had an opportunity to observe a vehicle's movement and has a recognition of impressions of like vehicles at relative speeds. The witness' opinion as to speed of the vehicle is admissible, its weight is for the jury. *Shaffer v. Torrens*, 359 Pa. 187, 58 A.2d 439 (1948).

In the instant case, Mr. Fairfax testified that he has driven an automobile almost every day since 1952. On June

21, 1976, he ran into the street after appellant collided with his parked car and saw appellant drive away heading south. He observed the vehicle for 5 or 6 seconds until it crashed. Mr. Gray has driven cars since 1946 and is employed as a tractor-trailer driver. On June 21, 1976, Mr. Gray was driving his car west on York Street and had stopped at the intersection of 30th Street for a stop sign. He looked north and saw appellant's car for about 2 seconds until it hit the steps.

We believe that both witnesses had good vantage points from which to observe appellant's vehicle and that each had a sufficient opportunity to assess the speed at which the car was traveling. Further, each witness was an experienced driver with the ability to compare appellant's vehicle with others they had seen. We find that the opinions of these witnesses as to appellant's speed were admissible.

Appellant argues that the court erred in permitting Lt. Geisz to provide his opinion on appellant's level of intoxication. Appellant contends that because Lt. Geisz did not know that appellant might have been unconscious following the accident, he could not state his opinion on appellant's condition. Intoxication is clearly a matter of common observation and lay people are permitted to tender their opinion on the issue. *Commonwealth v. McLaughlin*, 202 Pa.Super. 520, 198 A.2d 419 (1964); *Commonwealth v. Chapman*, 186 Pa.Super. 632, 142 A.2d 469 (1958).

Lt. Geisz testified that he observed appellant at Women's Medical College at about 10:00 p. m., on the night of the accident. Appellant's eyes were very bloodshot; his speech was slurred; his facial features were bloated; and there was a strong odor of alcohol emanating from him. Appellant's injuries were minor. Based upon his years of experience as a police officer, Lt. Geisz stated that in his opinion, appellant was under the influence of alcohol.

Lt. Geisz had a good opportunity to observe appellant and he enumerated the factors which led him to his

conclusion. Moreover, the jurors were aware of appellant's contention that he had been unconscious as a result of the accident. They could assess that factor together with the factors enumerated by Lt. Geisz and decide which to accord more weight in reaching their decision. We find that Lt. Geisz' opinion was admissible; its weight was for the jury.

Appellant raises two related evidentiary questions. He argues that the lower court erred in allowing Dr. Rogers to state his opinion on appellant's ability to operate a vehicle and in permitting the District Attorney to cross-examine appellant about his normal consumption of alcoholic beverages. For convenience we will first discuss the law applicable to both claims.

"Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value. *Commonwealth v. Jones*, 459 Pa. 62, 66, 327 A.2d 10, 13 (1974); *Commonwealth v. McCusker*, 448 Pa. 382, 388, 292 A.2d 286, 289 (1972). We have cited with approval the test for relevance propounded by two leading evidentiary authorities, Wigmore and McCormick. *Commonwealth v. Jones*, supra; *Commonwealth v. Lippert*, 454 Pa. 381, 384, 311 A.2d 586, 587 (1973); *Commonwealth v. McCusker*, supra. Wigmore defines relevance in terms of two axioms, 'None but facts having rational probative value are admissible,' and 'All facts having rational probative value are admissible, unless some specific rule forbids.' 1 Wigmore, Evidence § 9–10 at 289–95 (3rd Ed. 1940). McCormick suggests the following for determining relevance, '. . . [d]oes the evidence offered render the desired inference more probable than it would be without the evidence? . . . Relevant evidence then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible. McCormick, Evidence § 185 at 437–38 (2nd Ed. 1972)." *Commonwealth v. Walzack*, 468 Pa. 210, 218, 360 A.2d 914, 918 (1976). Pennsylvania courts have often stated: "It has long been the law that the question of relevance of proffered evidence rests first and foremost in the sound discretion of the trial judge. . .

In exercising this discretion the court should counterbalance the probative weight of the evidence against the danger that the jury may be unduly aroused by the facts offered into evidence." *Commonwealth v. Honeycutt*, 227 Pa.Super. 265, 270, 323 A.2d 775, 778 (1974); See also *Thompson v. American Steel & Wire Co.*, 317 Pa. 7, 175 A. 541 (1934); *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977).

■ Dr. Rogers, the police and fire surgeon, testified that when he examined appellant at 2:40 a. m. on June 22, 1976, appellant was under the influence of alcohol and incapable of driving an automobile. Medical testimony established that after he stops drinking, an individual's level of alcohol decreases gradually, depending on various factors. Therefore, Dr. Rogers' testimony was relevant to show appellant's probable earlier level of intoxication and was prima facie admissible as probative evidence. The evidence was not prejudicial to appellant because it did not lead the jury to decide the case on an improper basis. On balance, we find no error in the admission of this testimony.

In a similar claim, appellant argues that the lower court erred in allowing the District Attorney to cross-examine appellant about his normal drinking behavior because this evidence was irrelevant and highly prejudicial. In questioning appellant, the District Attorney asked a few questions about appellant's normal weekly alcoholic consumption and his ability to "hold" his liquor. The District Attorney was attempting to show that appellant frequently consumed four alcoholic beverages and was able to cope; however, on the night of the accident he was unable to function normally and must, therefore, have consumed more than the four drinks that he admitted imbibing. The Commonwealth also presented medical testimony that the rate of absorption and elimination of alcohol varies from one individual to another depending upon a spectrum of characteristics.

■ We believe that the questions propounded by the District Attorney were relevant to establish appellant's capacity or ability to tolerate alcohol. This line of questioning

would tend to show that appellant had consumed more alcohol than he admitted. Further, the questions were not calculated to inflame the jury's emotions of sympathy, hostility, or prejudice. The decision to admit the relevant testimony was well within the discretion of the trial court and we find no abuse of that power.

 Appellant next contends that the court erred in denying his motion for a mistrial when the chemist, Mr. McBride, expressed his opinion that appellant was intoxicated at the time the blood alcohol test was performed. The grant of a new trial is in the sound discretion of the trial court and will not be reversed unless there is a flagrant abuse of discretion. *Commonwealth v. Biancone*, 249 Pa.Super. 34, 375 A.2d 743 (1977). The testimony complained of is as follows:

[by the District Attorney]

"Q. Now, sir, did you perform this test on the blood submitted to you?

[McBride]

"A. Yes, sir, I did.

"Q. What were the results of the tests, sir, the blood that was submitted?

"A. I found that the alcohol content of the blood that I had run this test on was a .25 percent.

"Q. And that means what, sir? .25 per cent what?

"A. Would mean that the person who this blood was drawn from was intoxicated at the time."

Following objection by appellant's counsel, the court gave an extensive cautionary instruction [14] to the jury which directed

14. The court cautioned the jury:
 "THE COURT: Ladies and gentlemen, there has been objection made to the last statement made by the witness as to his opinion with regard to the sobriety of the person whose blood he had analyzed. And I say to you that you are to disregard the statement *of this witness' opinion* as to the degree of sobriety of the person whose blood contained .25 percent alcohol, and as I will further instruct you on that law later, but for the present I strike from the record the witness' opinion as to the state of sobriety of the person

it to ignore McBride's opinion on intoxication. This remark by McBride did not so taint the proceedings as to require the declaration of a mistrial. Moreover, the immediate and vigorous corrective action by the trial court removed whatever minimal prejudice the witness' remark may have occasioned. See *Commonwealth v. Gartner*, 475 Pa. 512, 381 A.2d 114 (1977); *Commonwealth v. Whitfield*, 474 Pa. 27, 376 A.2d 617 (1977).

Appellant argues that in its charge the trial court improperly characterized Dr. Filinger's testimony. Dr. Filinger, a forensic pathologist and assistant medical examiner for the City and County of Philadelphia, explained why there was a difference in result between the blood alcohol test and the breathalyzer test which was taken four hours later. He stated:

"It indicates that the person is burning off or consuming and excreting a certain amount of alcohol from the body, so that if we were concerned with .25, and four hours later .15, we would have approximately the normal excretory rate of disposition of ethyl alcohol in the body. In other words, four hours later, he has gotten about, well, almost half as sober as he would be if he hadn't anything. He is dropping the level gradually." When the court summarized the testimony it stated: "[Dr. Filinger] . . . indicated that the alcohol was being burned off in the body of the defendant, or the body was excreting it, and that the defendant was half as drunk at that time as he was at 10:45 p. m."

Reading the charge as a whole as we must, we find no prejudice. *Commonwealth v. Gartner*, supra; *Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977). The trial court may comment on the evidence presented and need not review all the testimony in a case. See *Commonwealth*

whose blood was analyzed by him, and you are to disregard it and put that out of your minds completely. I will tell you about what the law is as to one whose blood contains .25 percent alcohol at the proper time.

"Disregard this witness' opinion as to the degree of sobriety of the person whose blood contained that amount or that percentage of alcohol. Disregard that statement entirely. Rid your minds of it."

*v. Bederka*, 459 Pa. 653, 331 A.2d 181 (1975). In the instant case, the court carefully instructed the jurors that they were the sole judges of the facts and that their recollection controlled. Thus, if the jurors believed that the characterization of the Doctor's testimony was inaccurate, they could substitute their own interpretation. Additionally, the phrase "half as sober" and the phrase "half as drunk" have essentially the same meaning so that we find no prejudice to appellant.

Appellant raises two additional challenges to the court's charge. First he contends that in charging the jury on the defense of accidental homicide, the court failed to charge further that even if the acts were not accidental, unless the acts were more than negligent it could still acquit the appellant. Appellant concludes that the charge left the jury with the impression that if the conduct of appellant was not accidental, then it was necessarily grossly negligent. We reiterate that we must read the charge as a whole to determine whether a portion complained of or absent is reversible error. *Commonwealth v. Wortham*, 471 Pa. 243, 369 A.2d 1287 (1977). A court's charge to the jury will be upheld if it adequately and accurately reflects the law and was sufficient to guide the jury properly in its deliberations. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977).

In its charge, the court completely and adequately charged the jury on the elements of involuntary manslaughter, including the requirement that the act be performed in a reckless or grossly negligent manner. The court's charge on the requisite *mens rea* and the burden of proof was comprehensive. It later instructed the jury on the issue of accidental homicide as a defense. Because the court had already informed the jury of the elements of involuntary manslaughter, we believe there was no need to repeat them, nor did the court's charge leave the jury with any misapprehension as to the conduct required to constitute a violation of the law.

The second error appellant alleges in the charge is the court's failure to instruct the jury on two of appellant's submitted points. Appellant requested the following two instructions:

"1. Members of the Jury, the two essential and separate elements in the crime of involuntary manslaughter are reckless conduct and a direct causal connection between that conduct and the ensuing death.

"2. Members of the Jury, to be guilty of involuntary manslaughter the defendant's unlawful and reckless conduct must be the legal cause of the injury and death and legal cause means conduct which is a substantial factor in bringing about the harm. Defendant's conduct may be reckless but not the proximate cause of the death or his conduct may be the proximate cause of the death but not reckless."

The judge instructed the jury as follows: "If you believe that this defendant caused the victims' death unintentionally, and that the deaths resulted directly from the defendant's actions, and these actions, either lawful or unlawful, were done in a reckless or grossly negligent manner, and you are convinced of these three things beyond a reasonable doubt, you may find the defendant guilty of involuntary manslaughter on each of those charges for causing the deaths of two women."

Appellant mistakenly attempts to import a tort law concept, the substantial factor test or proximate cause test, into the criminal arena. This theory was unequivocally rejected by our Supreme Court in *Commonwealth v. Root*, 403 Pa. 571, 574, 170 A.2d 310, 311 (1961).

"While precedent is to be found for application of the tort law concept of 'proximate cause' in fixing responsibility for criminal homicide, the want of any rational basis for its use in determining criminal liability can no longer be properly disregarded. When proximate cause was first borrowed from the field of tort law and applied to homicide prosecutions in Pennsylvania, the concept connoted a much more direct causal relation in producing the alleged culpable re-

sult than it does today. Proximate cause, as an essential element of a tort founded in negligence, has undergone in recent times, and is still undergoing, a marked extension. More specifically, this area of civil law has been progressively liberalized in favor of claims for damages for personal injuries to which careless conduct of others can in some way be associated. To persist in applying the tort liability concept of proximate cause to prosecutions for criminal homicide after the marked expansion of *civil* liability of defendants in tort actions for negligence would be to extend possible *criminal* liability to persons chargeable with unlawful or reckless conduct in circumstances not generally considered to present the likelihood of a resultant death." (emphasis in the original).

In sum, the tort concept of substantial factor of proximate cause has no proper place in prosecutions for criminal homicide; a conviction requires more direct causal connection. Therefore, the lower court was entirely correct in refusing to read appellant's submitted points.

Finally, appellant contends that his sentence is illegal. The court sentenced appellant to 2½ to 5 years in prison on one count of involuntary manslaughter and 2½ to 5 years in prison on the charge of recklessly endangering another person. Appellant asserts that only one sentence may be imposed because the injury and deaths resulted from a single unlawful act.[15] Pennsylvania case law is well-settled that in cases of involuntary manslaughter in which more than one person is killed or injured by one unlawful act of the defendant, only one sentence may be imposed. The courts have reasoned that if there is a single criminal

---

15. Appellant also contends that his sentence of 2½ to 5 years in prison on the charge of recklessly endangering another person exceeds the statutory maximum and is, therefore, illegal. The Commonwealth concedes the illegality of the sentence. Under the Crimes Code, supra; 18 Pa.C.S. §§ 2705, 106(b)(7), and 1104(2), the maximum sentence which may be imposed on a misdemeanor of the second degree is two years. Consequently, on remand, if the court chooses to resentence on the charge of recklessly endangering another person, it may not impose a term of imprisonment of more than two years.

act there is a single injury to the Commonwealth. Consequently, the courts of Pennsylvania have no power to impose more than one sentence on a single unlawful act. *Commonwealth v. Speelman,* supra; *Commonwealth v. Cox,* 209 Pa.Super. 457, 228 A.2d 30 (1967); *Commonwealth ex rel. Brockway v. Keenan,* 180 Pa.Super. 78, 118 A.2d 255 (1955); *Commonwealth v. McCord,* 116 Pa.Super. 480, 176 A. 834 (1935); *Commonwealth v. Ernesto,* 93 Pa.Super. 339, (1928). The Commonwealth argues that the enactment of the Crimes Code dictates a different result. However, Pennsylvania law has been quite clear on this issue since 1928. If the legislature desired to change the law, it should have specifically done so. *Commonwealth v. Miller,* 469 Pa. 24, 364 A.2d 886 (1976). Because there has been no explicit change in this well-settled doctrine, we will continue to apply it. Accordingly, we vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated and case remanded for resentencing.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.