## Commonwealth *v.* Smith, Appellant.

Argued November 9, 1953. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Elmer E. Harter, Jr.,* with him *Prowell & Harter,* for appellant.

*Frederick H. Bolton,* Assistant District Attorney, with him *Huette F. Dowling,* District Attorney and *William H. Saye,* Assistant District Attorney, for appellee.

OPINION BY ROSS, J., January 19, 1954:

Alvin Smith was tried and convicted before a judge and jury in the Court of Quarter Sessions of

Dauphin County for operating a motor vehicle while under the influence of intoxicating liquor. His motion in arrest of judgment was overruled and after he was sentenced he took this appeal.

On October 16, 1952, between 7 and 7:30 a.m., a truck operated by defendant collided with an automobile driven by one Floyd Grubb, Jr. The accident occurred on Route 230 in the Borough of Highspire.

Grubb, testifying on behalf of the Commonwealth, stated that after the collision the defendant "opened the door and almost fell out of the cab" of the truck; that he smelled liquor "all around" defendant, "especially when he talked and babbled in such manner". Grubb left the defendant at the scene of the accident, "swaying to and fro as any person under the influence would", while he went across the road to a gasoline service station to telephone the police.

Joseph Bosavage, a state policeman, arrived at the service station about 20 minutes after the accident. When defendant saw Bosavage arrive he came "staggering . . . across the highway" to the gasoline station. With respect to defendant's condition Bosavage testified: "I had Mr. Smith walk a straight line and he was staggering. Then as I was near him, I noticed the odor of alcohol and I asked him if he had been drinking and he said he was drinking the night before." Bosavage did not take defendant to a doctor for examination because defendant was "visibly intoxicated".

Herman J. Faiola, another state policeman, arrived on the scene just before Bosavage gave defendant the "walking test". Faiola stated that his opinion the defendant was "visibly intoxicated" was based upon the following observations: ". . . the defendant had a strong odor of alcohol about him, weaving back and forth . . . His gait was very staggery and upon

the defendant coming back towards us I asked him to put his heels together and close his eyes momentarily and he didn't. He quickly opened his eyes and said he couldn't do it, he had too much."

Two police officers at the Borough of Highspire arrived at the service station shortly after the state policemen had given defendant the "walking test" and co-ordination test. Glenn Cooney, one of the Highspire officers, stated that he "smelled the alcohol" on defendant and testified that defendant admitted drinking whiskey and gin "that same morning previous to the accident". The other Highspire policeman, Amos T. Miller, stated that the defendant "talked in a rambling manner" and added, "You could smell liquor on his breath."

Alvin Smith was the only witness for the defense. He testified that about 10 p.m. the night before his arrest he drank "three small ones out of whiskey because I don't like gin anyhow"; but on cross-examination admitted, "I just might have taken one swallow [of gin] to see if it tasted satisfactory . . ." The "three small ones" out of the whiskey bottle and the "swallow" of gin was consumed over a period of approximately three and one-half hours. The defendant, according to his testimony, left his companions at 1:30, drove his automobile home and went directly to bed. He testified that he had nothing to drink between 1:30 a.m. and the time of the accident. When his truck collided with the Grubb car the defendant, according to his story, struck the left side of his head on the door.

Because of the present importance attached to the alleged head injury, we reproduce the following from the record of defendant's testimony on direct examination: "What effect did that blow on your head have upon you? A. At the time, it just numbed me

all of a sudden. I just stopped and as soon as I pulled off out of the road, I pulled over to the side of it, and so I sat there for a minute until I could get my scenery back again. Q. Get your what? A. Get my scenery back again. Q. Your senses you mean? A. Yes. -Then I started getting out and he [Grubb] was already out so we met in front of the truck. So I asked him, 'What type of driving you call that?' Q. Were you able to maintain your balance? A. Yes, but I was dizzy for a while, you know, until I got— Q. You were dizzy for a while, you say? A. Yes." The defendant stated that he was nervous after the accident and that his speech then was "about the same as it is now, as far as that goes. I am excited now, see, because it is the same thing, I can't talk when I get excited." He offered as a second explanation for "staggering" after the accident a "twisted ankle" that interfered with his normal walk. He demonstrated his walk for the jury. On cross-examination he admitted that he had not complained of a head injury when he was being examined by the police officers after the collision. He stated that he did not tell the policemen that he had had anything to drink.

The Commonwealth concedes that defendant was not taken to a doctor for an examination to determine whether or not he was under the influence of intoxicating liquor.

The *Vehicle Code* (Act of May 1, 1929, article VI, section 620, as amended, 75 PS sec. 231) provides: "It shall be unlawful for any person to commit any of the following acts: . . . (f) To operate a motor vehicle . . . while under the influence of intoxicating liquor . . ." The Vehicle Code, 75 PS sec. 737, provides: "(a) . . . That all fines and penalties collected, and all bail forfeited for violations of the provisions of subsection (f) of section six hundred twenty (620), shall be

paid to the treasury of the county wherein the violation occurred, to be used by such county for the payment of physicians' fees for the examination of persons accused of violating the provisions of the said section . . ."

The defendant, relying upon the above provisions, contends that The Vehicle Code requires "an affirmative finding by a physician before a conviction can be had on the charge of operating a motor vehicle while under the influence of intoxicating liquors." With this contention we cannot agree.

It is, of course, the practice for law enforcement officers to have a physician examine a person suspected of violating section 620 of The Vehicle Code. The mere fact that the Legislature was aware of this practice and made provision for payment of physicians' fees does not disclose an intention to require that there must be an examination by a physician before a conviction can be had.

The "influence" of intoxicating liquor is a transitory thing. There are many highways in this Commonwealth far from the home or office of a physician. If there must in every instance be a medical examination upon which to base a conviction for drunken driving, the prohibitions of section 620 would, in many cases, be unenforceable. The Legislature could not have intended this result.

The title of the amendatory act of June 29, 1937, P. L. 2329, which added the provision under discussion, states that the amendment deals with the "disposition of fines and penalties for certain violations of the act". There is nothing in the contemporaneous legislative history or in the legislative and administrative interpretations of the provision to indicate that it has the meaning contended for by defendant. Consequently, we hold that The Vehicle Code does not re-

quire that a person shall be examined by a physician before such person can be convicted for operating a motor vehicle while under the influence of intoxicating liquor.

The defendant's second contention is that the testimony of a physician is the "best evidence" of intoxication, and that the testimony of laymen on the subject will sustain a conviction only when it is shown that a physician was unavailable to make the examination. We do not agree.

In *Com. v. Long*, 131 Pa. Superior Ct. 28, 198 A. 474, the defendant was tried and convicted of operating a motor vehicle while under the influence of intoxicating liquor. On appeal the defendant contended that there was no evidence to sustain the verdict. There was no examination of the defendant by a physician, and, of course, no medical testimony of intoxication. No attempt was made by the Commonwealth to show that no physician was available when the arrest was made. We affirmed the conviction.

In the early (1889) case of *Western Union Tel. Co. v. Stevenson*, 128 Pa. 442, the Supreme Court stated at page 454: "In requiring the production of the best evidence applicable to each particular fact, it is meant that no evidence shall be received which is merely substitutionary in its nature, so long as the original evidence can be had. *The rule excludes only that evidence which itself indicates the existence of more original sources of information; but where there is no substitution of evidence, but only a selection of weaker instead of stronger proofs, or an omission to supply all the proofs capable of being produced, the rule is not impinged.*" (Italics supplied.) The most the defendant can contend is that the Commonwealth selected "weaker instead of stronger proofs" or that it omitted "to supply all the proofs capable of being produced".

The later cases dealing with the so-called best evidence rule limit its application to documents. Cf. *Com. ex rel. v. Joyce*, 316 Pa. 434, 439, 175 A. 422; *Mars v. Meadville Telephone Co.*, 344 Pa. 29, 32, 23 A. 2d 856; *Masse v. Quartucci*, 170 Pa. Superior Ct. 234, 85 A. 2d 690.

The expression "under the influence of intoxicating liquor" as used in the statute "covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive one of that clearness of intellect and control of himself which he would otherwise possess." *Com. v. Buoy*, 128 Pa. Superior Ct. 264, 267-268, 193 A. 144; *Com. v. Long*, supra, 131 Pa. Superior Ct. 28, 36, 198 A. 474; *Com. v. Carnes*, 165 Pa. Superior Ct. 53, 58, 67 A. 2d 675. It is not reasonable to require the testimony of a physician when a defendant is in one of the "well known and easily recognized conditions and degrees of intoxication".

The defendant, however, contends that the testimony of a physician was vital here because laymen cannot "distinguish between physical reactions which result from being under the influence of intoxicating liquor and those which result from a blow to the head". There is no testimony that the effect of the alleged blow on the head continued throughout the time when defendant was being examined and observed by the Commonwealth's witnesses. The defendant testified that he was able to maintain his balance when he got out of the truck immediately after the accident. He stated that he was "dizzy for a while, you know, until I got . . .", at which point alert counsel interrupted him with another question.

Further, the blow on the head would not, of course, explain the strong odor of alcohol about him. The

jury was in a position to judge whether the defendant's twisted ankle made his walk appear as if he were "staggering", and they were also able to ascertain whether defendant sounded intoxicated when he was excited. He walked for the jury and he stated that his speech after the accident was the same as at the trial.

We think there was sufficient competent evidence to sustain the verdict.

Judgment affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called; and that he be by that court committed until he has complied with the sentence, or any part thereof which had not been performed at the time this appeal was made a supersedeas.