## Commonwealth v. Giehll

*James B. Yelovich,* district attorney, for the Commonwealth.

*Jerry L. Spangler,* for defendant.

COFFROTH, *P.J.,* July 20, 1983—This case is here on defendant's motion for new trial and arrest of judgment filed following his jury trial of driving under the influence in violation of Vehicle Code §3731(a)(1) of which he was found guilty.[1]

---

1. Defendant was also charged with summary violations of Code §1332 (Display of Registration Plate), §1543 (Driving While Operating Privilege Is Suspended or Revoked) and §3362(a) (Speeding); the first of those charges was nol prossed, defendant was acquitted of the second, and found guilty of the last in a nonjury trial.

In the trial of §1543 for driving during suspension, the evidence showed that at the time of the alleged offense defendant was a resident of Pennsylvania, his operating privilege had been previously suspended and the alleged offense occurred prior to expiration of the suspension period calculated from either the date of conviction or the date of suspension, but defendant was in possession of his operator's license card, it not having been surrended to the department. The acquittal was mandated by the relevant part of Code §1541(a) providing that, except in the case of nonresidents: "The period of revocation or suspension of the operating privilege shall commence

The motions raise the following issues:

1. The trial judge (Coffroth, P.J.) erred in allowing testimony of defendant's refusal to submit to a breathalyzer test because the evidence was "irrelevant and prejudicial" and defendant "had not been fully advised of all consequences of such refusal prior to making his decision." The trial judge further erred in instructing the jury that evidence of the refusal could be considered as bearing on knowledge or consciousness of guilt.

2. The trial judge erred in allowing the state police officers who had observed defendant at and shortly after the time of driving to give their opinion that he was under the influence of alcohol to the degree that rendered him incapable of safe driving, because lay opinion as to ultimate facts is inadmissible and no foundation evidence establishing expertise was offered; and the trial judge also erred in instructing the jury that it could consider such opinion evidence.

3. The trial judge erred in denying defendant's motion for mistrial on account of prejudicial remarks by the district attorney in closing argument to the jury, appealing to their interest as taxpayers.

Defendant's Refusal To Take Breathalyzer Test

Vehicle Code 75 Pa.C.S. §1547(e) expressly provides for admission into evidence of the accused's refusal to take a breathalyzer test, as follows:

"(e) Refusal admissible in evidence.—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of

on the date on which the driver's license was surrendered to and received by the court or department, as the case may be." See Commonwealth v. Petrelli, 50 Pa. Commw. 303, 413 A.2d 749 (1980); compare Commonwealth v. Antram (No. 4), 38 Somerset L. J. 69 (1979). The statute is designed to assure that the full period of suspension or revocation will be served.

section 3731 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumption shall arise from this evidence but it may be considered along with other factors concerning the charge."[2] Defendant's assignments of error on this subject raise two questions: (1) Is defendant's refusal of the test relevant as substantive evidence of guilt of driving while under the influence? (2) If so, was defendant entitled to a prior warning that a refusal could be used against him in a prosecution for driving under the influence? We answer the first question in the affirmative, the second in the negative, for the following reasons:

(1) Relevance: Any conduct of the accused which circumstantially manifests a consciousness of guilt such as escape from custody, flight, refusal to submit to lawful examination, fabrication or concealment or suppression of evidence which may be inculpatory, is admissible as substantive evidence on the question of guilt or innocence of the crime charged. See: Summary of Pennsylvania Jurisprudence, Evidence §38; Jenkins, Pennsylvania Trial

---

2. This is the Amendment of 1982 P.L. 1268 §5. Section 624.1(h), 75 P.S., of the former Vehicle Code contained a comparable provision allowing evidence of the refusal. Section 1547 of the new Vehicle Code, Act of 1976 PL 162, 75 Pa.C.S., omitted such a provision, apparently by oversight, see Commonwealth v. Charles 270 Pa. Super. 280, 411 A.2d 527 (1980) dissenting opinion. In Charles, the Superior Court held that by reason of the omission, evidence of refusal was inadmissible. The omission was cured by the 1982 amendment quoted above effective January 14, 1983. The instant offense was committed on March 1, 1983.

Evidence Handbook (1974, Bisel) §4.23; CJS, Criminal Law §§623-636; McCormick on Evidence (2nd Edition, 1972 West) §272. As stated in Commonwealth v. Robinson, 229 Pa. Super. 131, 148, 324 A.2d 441 (1974), allocatur refused 229 Pa. Super. XXXV: "This analysis is equally applicable to a defendant's refusal to submit to a breath test." See also Commonwealth v. Herjeczki, 61 D.&C.2d 147, 163 (1972). Hence, there is no real question about the relevance of the refusal. Of course, defendant is entitled to explain his conduct, as he was allowed to do here at the trial.[3]

(2) The defense contention that defendant was entitled to be informed that refusal could be used against him in the prosecution for driving under the influence has been frequently made in the past and consistently rejected. See: Commonwealth v. Rutan, 229 Pa. Super. 400, 323 A.2d 730 (1974); Commonwealth v. St. Clair, 28 Somerset, L. J. 181, 182 (1972); Commonwealth v. Thompson, supra, 102. Those cases hold that a mere refusal to take the test, whether manifested by physical resistance or noncooperation, or orally, as distinguished from inculpatory factual assertion accompanying such conduct, is non-testimonial in character and is not therefore protected by the Fifth Amendment privilege against self-incrimination, nor is the Fourth Amendment necessarily involved. See also: Commonwealth v. Robinson, supra; Commonwealth v. Dougherty, 259 Pa. Super. 88, 393 A.2d 730 (1978);

---

3. Defendant explained that he was upset at the time and that he thought he was entitled to a lawyer first. Although there is no right to counsel, see Commonwealth v. Thompson, 26 Somerset L. J. 99, 102 (1970), defendant was nevertheless permitted to explain his opinion in order to counteract the inference that he acted from a consciousness of guilt.

Commonwealth v. Tanchyn, 200 Pa. Super. 148, 188 A.2d 824 (1963); Commonwealth v. Robinson, 7 Pa. Commw. 521, 300 A.2d 913 (1973); Commonweatlh v. Abraham, 7 Pa. Commw. 535, 300 A.2d 831 (1973); South Dakota v. Neville, 74 LEd2d 748 (1983). There is neither constitutional nor statutory mandate for such prior warning.

The present defense contention is based on language in Commonwealth v. Charles, ante note [2], 286-287, quoting from judicial decisions in Washington State and Alaska holding that where the statute imposes as consequences of refusal to take the test, both license suspension and admission of the refusal as evidence at trial, but requires prior warning only of the former consequence, it is "unfair to have the driver believe that refusal would have one consequence and then permit the state to assert an additional consequence." Although our statute appears to do that, we reject that reasoning. First, it is pure dictum uttered in the context of construing the prior statute which contained no provision for admission of the refusal into evidence. Second, footnote 11 of Charles explains that Rutan is not followed because: "The 1976 Code [prior to the 1982 amendment here involved] changed the premise upon which Rutan was decided"; now that the 1982 amendment has restored Rutan's original premise, Rutan's validity should likewise be restored. Third, in order to adopt the defense view of Charles, we would have to conclude that our present §1547(e) is unconstitutional without the warning here under discussion, and in effect create by judicial ukase another "little Miranda" formula; we see no such fundamental unfairness warranting that sort of judicial intervention. There is sound reason for requiring the warning in one case and not the other: the refusal is decisive in the case of suspension or revoca-

tion, but in a criminal prosecution the refusal is merely adventitious and peripheral to the additional substantive evidence of guilt which would be required to convict. Compare: Commonwealth v. Kaufold, 222 Pa. Super. 275, 294 A.2d 743 (1972), in which the court found introduction into evidence of the refusal as harmless error and side-stepped the constitutional issue later decided in Rutan. The distinction is sufficiently material to warrant the value judgment made by the legislature to require that the motorist be warned of the suspension consequence, without requiring warning of evidentiary effect in a criminal trial, instead of the all-or-nothing stance which Charles seems to prefer. Compare: Commonwealth v. Patton, 38 Somerset L. J. 339, 344 (1979) and cases therein discussed: Malishaucki v. Commonwealth, 58 Pa. Commw. 354, 427 A.2d 787 (1981).

Accordingly, we reject defense contentions respecting the evidence and charge of the trial court on the subject of defendant's refusal of the breathalyzer test.

### Lay Opinion Of Intoxication:

The rule is stated in Commonwealth v. Supanick, 26 Somerset L. J. 267, 370 (1971) as follows:

"The opinion testimony as to defendant's intoxication was admissible. Intoxication is a matter of common observation on which the opinions of non-experts are admissible provided the witness narrates observed facts supporting and consistent with the opinion expressed." (Citations omitted.)
Accord: Summary of Pennsylvania Jurisprudence, Evidence §351.

The defense concedes this to be the rule and that it was applied in driving under the influence cases under the former Vehicle Code, but should not be

applicable under the present Vehicle Code of 1976 which made some change in language in defining the offense of driving under the influence. The offense is defined in § 1037 of the former Code, 1959 P.L. 58, 75 P.S., as follows:

"It shall be unlawful for any person to operate a motor vehicle . . . while under the influence of intoxicating liquor . . ."

The offense is defined in §3731(a) of the present code, 1976 PL 162, 75 Pa.C.S., as follows (relevant part):

"(a) Offense defined. - A person shall not drive any vehicle while: (1) under the influence of alcohol *to a degree which renders the person incapable of safe driving;* (2) . . . ; (3) . . . " (Emphasis added.)

Defendant's counsel argues that while a lay witness is qualified to state his opinion, with proper factual foundation of his observations, that another observed person is at the time "under the influence of intoxicating liquor", it requires an expert to say whether that influence exists "to a degree which renders the person incapable of safe driving." We disagree. The importance of clear perception and self-control to safe driving is today a matter of such general knowledge that it is known virtually to every "normal, reasoning and observing human, especially an adult of ordinary intelligence", see Carter v. Gallo, 27 Somerset L. J. 181, 188 (1972), whether or not he or she has any experience as a driver, just as the ordinary layman is capable of recognizing the symptoms of the condition of being under the influence of alcohol without any experience of being in that condition. No special expertise is required; and if we were to require it, what sort would suffice? The demander of the highest perfection in human affairs would undoubtedly be dissatisfied with anything less than one who had made a series of con-

trolled scientific tests which would tell us exactly how many drinks it would take to make one unfit to drive. The settled societal consensus is that .10% of blood alcohol tested by blood or breath is the surest measure; defendant had that opportunity and refused it. We must take care not to be enticed into "ascending too high in the tower of ethereal and logical niceties" that we disengage our common law from earthly realities. See: Commonwealth v. Deyot, 42 Somerset L. J. 78, 80 (1982); Commonwealth v. Antram (No. 3), 38 Somerset L. J. 52, 68 (1979).

Moreover, although no helpful rulings under the new code have come to our attention, the authorities accepting lay opinion on intoxication under the language of the old code expressly recognized that in prosecutions for driving under the influence unfitness to drive was the essential component of the offense. In the leading case of Commonwealth v. Horn, 395 Pa. 585, 590, 150 A.2d 872 (1959), the court connected the two points as follows:

"It is very difficult to define 'drunk', or 'intoxicated' or 'under the influence of intoxicating liquor'. Intoxication is a matter of common observation and knowledge, and because of observation, knowledge or experience, the opinions of laymen are admissible and medical opinion, while of course admissible, is not required: Commonwealth v. Eyler, 217 Pa. 512, 66 Atl.746 (1907); Commonwealth v. Smith, 174 Pa. Super. 533, 102 A.2d 243 (1954); Turner v. Penna. Liquor Control Board, 161 Pa. Super. 16, 53 A.2d 849 (1947).

"The statutory expression 'under the influence of intoxicating liquor' includes not only all the well known and easily recognized conditions and degrees of intoxication, but also any mental or physical condition which is the result of drinking alco-

holic beverages and (a) which makes one unfit to drive an automobile, or (b) which substantially impairs his judgment, or clearness of intellect, or any of the normal faculties essential to the safe operation of an automobile."

This is clear recognition of the acceptability of lay opinion on the issue of intoxication to the degree that a person is not fit to drive a vehicle safely. Unfitness to drive safely has always been the essential element of culpable driving under the influence in both criminal and civil cases. Compare: Billow v. Farmer's Trust Co., 438 Pa. 514, 266 A.2d 92 (1970); Morreale v. Prince, 436 Pa. 51, 258 A.2d 508 (1969); Fisher v. Dye, 386 Pa. 141, 125 A.2d 472 (1956). In Commonwealth v. McLaughlin, 202 Pa. Super. 520, 198 A.2d 419 (1964), the officer testified in a prosecution for driving under the influence that defendant "was under the influence of alcohol and could not operate a motor vehicle properly" (522), which the court held was within the capacity of laymen to say (523). Each of the officers in this case, who had observed defendant at close range after arrest, gave an adequate factual foundation for his opinion based on personal observation, which was sufficient to enable the jury to make its own evaluation of the credibility, worth and weight of the opinion testimony. See: Commonwealth v. Summers, 269 Pa. Super. 437, 410 A.2d 332 (1979); Commonweatlh v. Reynolds, 256 Pa. Super. 259, 389 A.2d 1113 (1978).

The motion also complains that allowing witnesses to express opinion that defendant was under the influence to the requisite degree violates the rule against allowing opinion testimony on the ultimate issue of the case. The simple answer is that there is no such rule. This "mere bit of empty rhetoric" is well laid to rest in Commonwealth v. Daniels,

480 Pa. 340, 351-352, 39 A.2d 172 (1978) and the authorities therein discussed. Of course, no witness can deliver the verdict, nor even make a statement in the trial as to what the verdict should be. That may not happen and did not happen here.

The opinions of the officers were properly admitted under correct instructions.

Commonwealth's Closing Argument

The final assignment of error is stated in the post-verdict motions as follows:

"4. The trial Court erred in denying the defendant's motion for mistrial due to prejudicial remarks by the district attorney in his closing arguments. The district attorney noted that the salaries of the Commonwealth's witnesses were all paid by the jurors and then proceeded to argue in favor of their credibility. Said argument appeals to the juror's interest as taxpayers and is improper."

In discussing the factual situation at the time of arrest, the district attorney stated in his closing that:

"We have two police officers, two young fellows that *you are paying to do the job,* out there on the road at 11:30, 11:40 at night . . ." (Emphasis added).

Then follows recitation of factual detail. Thereafter the district attorney referred to the conflict in the testimony between the officer and defendant and said on the question of credibility:

"It's for you to decide on the basis of what you heard in this court room which of the witnesses you will believe in that regard. Whether you believe the police officers or whether you will believe Mr. Giehll."

Later the district attorney further argued:

". . . the officers would have been remiss in their

obligation *to you* as law enforcement officers if they did not take the man in for the breathalyzer. Under those circumstances it's their duty to do that. To leave him on that highway would be to perpetuate the hazard and they are there to prevent it. *That's what you are paying them for.*" (Emphasis added). We do not see in these remarks what defense counsel argues, that Commonwealth counsel in effect said to the jury that the officers were credible or more credible because the jurors as taxpayers were paying them; instead the argument seems to be that the officers were doing the job which the jurors as taxpayers were paying them for. But assuming that both inferences were possible, involvement of the juror's economic interest in the outcome of the case is not either clear or definite, and is not sufficiently serious to warrant mistrial. There is no sign of vindictiveness or significant appeal to prejudice, nor any suggestion that a verdict one way or the other would affect the jurors as taxpayers. The remarks were temperate in tone and content and did not distract the jury from a dispassionate and objective evaluation of the evidence. Compare Commonwealth v. Gilpin, 38 Somerset L. J. 179 (1980); see also: Commonwealth v. Revty, 448 Pa. 512, 295 A.2d 300 (1972); Commonwealth v. Clark, 322 Pa. 321, 185 A. 764 (1936); Commonwealth v. Clark, 280 Pa. Super. 1, 421 A.2d 374 (1980).

After denial of the motion for mistrial, defendant made no request for a cautionary or remedial instruction, so none was given. We note, however, that the fact that the jurors as taxpayers were paying or helping to pay the officers is a purely extraneous fact, utterly irrelevant to any material issue in the case including credibility, and is better omitted entirely. Compare Gilpin, supra, 181 at note [1]. So,

had a request been made, such an instruction would have been proper.[4]

## ORDER

Now, July 20, 1983, defendant's motion for new trial and in arrest of judgment are denied. Defendant shall be scheduled sec reg for sentencing after completion of pre-sentence investigation and report. I Concur: Shaulis, *J*.

---

4. We do not say that such a request should have been made. Counsel must consider whether in the circumstances a remedial instruction might emphasize unduly and needlessly focus the jury's attention on a minor matter. See: Commonwealth v. Leonard, 499 Pa. 357, 453 A.2d 587 (1982); Commonwealth v. Humphrey, 473 Pa. 533, 538, 375 A.2d 717 (1977); Commonwealth v. Wilson, 431 Pa. 21, 29 (1968); Commonwealth v. Bey, 284 Pa. Super. 210, 214, 425 A.2d 777 (1981); Commonwealth v. Brown, 274 Pa. Super. 609, 612, 418 A.2d 573 (1980); Commonwealth v. Barren, 273 Pa. Super. 492, 502, 417 A.2d 1156 (1979); Commonwealth v. Colon, 264 Pa. Super. 314, 322, 399 A.2d 1068 (1979); Commonwealth v. Irby, 230 Pa. Super. 317, 326 A.2d 617 (1974); Commonwealth v. Schindler, 28 Somerset L. J. 218, 229 (1973).