**COMMONWEALTH OF PENNSYLVANIA,**
**Appellee,**

v.

**Amanda O'BRYON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 4, 2002.

Filed April 4, 2003.

Thomas N. Farrell, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, and Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Com.

Before: HUDOCK, TODD, and GRACI, JJ.

TODD, J.:

¶ 1 Amanda O'Bryon appeals the judgment of sentence of 48 hours to one year

confinement imposed by the Honorable Lawrence J. O'Toole following her conviction at a bench trial of one count of driving under the influence of alcohol [1] and a summary charge of accidents involving damage to an unattended vehicle or property.[2] Following our review of the record before us, we affirm.

¶ 2 The relevant facts of record are as follows. At trial, the Commonwealth presented the testimony of Officer Richard Begenwald of the City of Pittsburgh Police Department. Officer Begenwald, whose expertise in police matters relating to driving under the influence was stipulated to by defense counsel (N.T. Trial, 7/11/01, at 9), testified that on August 22, 1999, he was on routine patrol in the Squirrel Hill section of Pittsburgh at approximately 6:15 a.m. when he encountered an unoccupied, parked vehicle that apparently had been hit by another vehicle. The parked car had been pushed into the yard, bushes and porch of a home on Wightman Street. Officer Begenwald stopped his police car and got out to survey the scene. He observed an oil trail leading from the scene of the accident and followed it in his vehicle approximately one mile down Wightman Street to Pocussett Street. The oil trail ended at a silver BMW convertible parked in the driveway of 5483 Pocussett Street. (*Id.* at 11.)

¶ 3 As Officer Begenwald approached, he observed Appellant exiting the vehicle. He further observed extensive front-end damage to Appellant's car and noted that she was having difficulty keeping her balance. Officer Begenwald asked Appellant to produce her driver's license and registration, but she was unable to locate it in the car. He noted that she was "very, very sleepy. Her walk was very poor, staggering, almost falling." (*Id.* at 13.)

Officer Begenwald testified that he asked Appellant what had happened with the accident down the street and she stated that "the car had jumped out in front of her." (*Id.*) The officer asked her whether she had been drinking or had anything to eat and she advised him that she had been drinking, but had not had anything to drink since the accident. (*Id.*)

¶ 4 Officer Begenwald further testified that because he detected the odor of alcohol on Appellant's breath (*id.*) and sensed that she was intoxicated, he conducted a field sobriety test to determine whether she was under the influence of alcohol or another controlled substance, which she failed. (*Id.* at 14, 16.) Officer Begenwald asked Appellant whether she was under the influence of any prescription drugs and she advised him that she was on Prozac, Xanax and Temazepam, which she had taken recently before the accident, but the officer testified that he did not know when or how much she had taken. (*Id.* at 15, 21.) Appellant advised the officer that she had been involved in a domestic dispute prior to the accident that had caused her to take the additional prescription drugs. (*Id.* at 15.) After Officer Begenwald administered the first field sobriety test, Appellant began to complain of neck pain. (*Id.* at 16.) Because of the nature of the accident, the officer stopped administering field sobriety tests and requested that paramedics transport Appellant to the hospital for evaluation and a blood alcohol test. (*Id.* at 17.) No drug screen test was performed at the hospital to determine the presence of other controlled substances or prescription drugs in Appellant's blood. (*Id.* at 28.)

¶ 5 Officer Begenwald testified that paramedics responded to the scene and trans-

---

1. 75 Pa.C.S.A. § 3731(a)(1).

2. 75 Pa.C.S.A. § 3745.

ported Appellant to Presbyterian University Hospital, where she was examined and her blood alcohol level tested at 8:28 a.m. pursuant to a valid search warrant obtained by Officer Begenwald. (*Id.* at 18.) Appellant's blood alcohol test result was .0788. (*Id.* at 30.) The officer further testified that he had observed no visible injuries on Appellant's head or body and that she did not complain of any pain until she failed the second field sobriety test that he attempted to administer. (*Id.* at 25.) The officer testified that based on his training and experience, the results he obtained of the field sobriety tests he administered were indicative of someone who was under the influence of alcohol. (*Id.*)

¶ 6 Appellant was charged with violating the aforementioned sections of the Motor Vehicle Code, as well as Section 3731(a)(3), which prohibits driving a vehicle while under the combined influence of alcohol and any controlled substance to a degree which renders the person incapable of safe driving, and proceeded to a bench trial on July 11, 2001. Following trial, however, the defense moved for judgment of acquittal with regard to the charge under Section 3731(a)(3). The trial court granted the motion based on the absence of evidence of drug screen test results (N.T. Trial, 7/11/01, at 28–29), but convicted Appellant of Sections 3731(a)(1) and 3745. Appellant was scheduled to be sentenced on July 23, 2001, but failed to appear. She eventually was sentenced on October 15, 2001. The sentence, which was to begin on November 15, 2001, was to be served at the ARC House and Appellant was to be paroled effective November 17, 2001. Appellant timely appealed, asking this Court to consider one question: Whether there was sufficient evidence to demonstrate that Appellant was driving "under the influence of alcohol to a degree which renders the person incapable of safe driving"? (Appellant's Brief at 4.)

 ¶ 7 In reviewing an issue of sufficiency of the evidence, this Court must consider "whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined all the elements of the crime have been established beyond a reasonable doubt." *Commonwealth v. Hagan,* 539 Pa. 609, 613, 654 A.2d 541, 543 (1995). Furthermore, it is axiomatic that appellate courts must defer to the credibility determinations of the trial court as fact finder, as the trial judge observes the witnesses' demeanor first-hand. *Commonwealth v. McCracken,* 540 Pa. 541, 551, 659 A.2d 541, 546 (1995).

¶ 8 Section 3731(a)(1) of the Motor Vehicle Code, Driving under the influence of alcohol or controlled substance, states:

(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;

75 Pa.C.S.A. § 3731(a)(1).

¶ 9 In support of her contention that the evidence presented by the Commonwealth was insufficient to support her conviction under Section 3731(a)(1), Appellant argues that "although it was stipulated that the police officer was trained and qualified to form an opinion, this officer never testified that [Appellant] was under the influence of alcohol, which rendered her incapable of safe driving (at the time of her driving or afterwards)." (Appellant's Brief at 10 (emphasis in original).) She argues that "[t]he evidence actually demonstrated that Ms. O'Bryon had a domestic problem and was upset before she had the accident. This was the cause of the accident." (*Id.*) Arguing that "she swerved to miss a vehi-

cle that had simply appeared before her", she alleges that the head and neck injuries that she sustained in the accident impaired her ability to perform the field sobriety tests on which Officer Begenwald made the judgment that she was intoxicated and incapable of safe driving. (*Id.*)

¶ 10 Appellant further argues that because Officer Begenwald testified, based on his observations of her, that he suspected that she was under the influence of more than just alcohol, the trial court's dismissal of the charge under Section 3731(a)(3) precludes her being convicted under Section 3731(a)(1). (Appellant's Brief at 12.)

■ ¶ 11 The trial court, in its opinion written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, determined that the Commonwealth had met its burden of proof under Section 3731(a)(1) based on *Commonwealth v. Smith*, 174 Pa.Super. 533, 102 A.2d 243 (Pa.Super.1954), in which this Court held that the phrase "under the influence of intoxicating liquor" covers not only the well-known and easily recognized conditions and degrees of intoxication, "but any abnormal mental or physical condition which is the result of indulging in any degree of intoxicating liquors, and which tends to deprive one of the powers of intellect and control of himself which he would otherwise possess." (Trial Court Opinion, 3/6/02, at 3 (citing *Smith*, 102 A.2d at 246).) The trial court further opined that the Commonwealth presented sufficient credible evidence to sustain the finding that Appellant's symptoms of intoxication and unsafe driving displayed at the time of the accident were the result of alcohol ingestion and that Appellant's leaving the scene of an accident and claim that the car "jumped out in front of her" were consistent with drunken driving rather than any alleged head injury that she might have sustained on impact with the parked vehicle. (Trial Court Opinion, 3/6/02, at 4.) We agree.

■ ¶ 12 Our Supreme Court has interpreted the phrase "under the influence of alcohol" by stating:

> The statute does not require that a person be drunk, or intoxicated, or unable to drive his automobile safely in traffic, but merely that the Commonwealth prove beyond a reasonable doubt that the defendant was operating his automobile under the influence of intoxicating liquor ... The statutory expression "under the influence of intoxicating liquor" includes not only all the well known and easily recognized conditions and degrees of intoxication, but also any mental or physical condition which is the result of drinking alcoholic beverages and (a) which makes one unfit to drive an automobile or (b) *which substantially impairs his judgment, or clearness of intellect, or any of the normal faculties essential to the safe operation of an automobile.*

*Commonwealth v. Griscavage*, 512 Pa. 540, 544, 517 A.2d 1256, 1258 (1986) (citation omitted) (emphasis in original). The Commonwealth presented the testimony of Officer Begenwald, who was qualified as an expert in issues related to driving under the influence based on his experience and training in the field. He testified that Appellant unquestionably had rammed a parked car with her vehicle hard enough to push it into the yard of a home and then left the scene—clear indications of her impaired judgment. He further described Appellant's confused, staggering demeanor and stated that he detected the odor of alcohol on Appellant's breath as he spoke with her and noted that she was unable to maintain her balance or locate her license and registration. Regardless of Officer Begenwald's expression of suspicion that

Appellant might also have consumed narcotics or another controlled substance in addition to alcohol, his testimony of her obvious intoxication and inability to safely operate her vehicle as a result of alcohol consumption was credited by the trial court and amply supported her conviction under Section 3731(a)(1).[3] Accordingly, we affirm Appellant's judgment of sentence.

¶ 13 Judgment of sentence AFFIRMED.

3. We further note that because there was ample evidence of record to support the trial court's conclusion that Appellant's impaired condition was caused by alcohol consumption, we are not persuaded by Appellant's argument that her alleged head and neck injuries, sustained on impact with the parked car, rendered her dizzy and unable to perform the field sobriety tests administered by Officer Begenwald.