J-S68030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SCHOFIELD FISHER | |
| Appellant | No. 390 EDA 2014 |

Appeal from the Judgment of Sentence January 17, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002453-2011

BEFORE:  ALLEN, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                 **FILED DECEMBER 19, 2014**

Appellant, Schofield Fisher, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for aggravated assault,[1] simple assault,[2] recklessly endangering another person ("REAP"),[3] and possession of an instrument of crime.[4]  We affirm.

---

[1] 18 P.S. § 2702(a).

[2] 18 P.S. § 2701(a).

[3] 18 P.S. § 2705.

[4] 18 P.S. § 907(a).

On August 27, 2013, the trial court conducted a bench trial. The victim Norman Gordon, Police Officers Edgar Ruth and Christina Mellett, and Appellant testified.

Mr. Gordon testified that he was the resident superintendent of a rooming house in Philadelphia. N.T., 8/27/2013, at 12. Appellant often visited Cheryl Stamp, who resided at the rooming house. *Id.*, at 15. On February 12, 2011,[5] Mr. Gordon heard the front door open and observed Appellant enter. *Id.*, at 14. Mr. Gordon asked Appellant how he obtained access to the house. *Id.*, at 14-15. Appellant proceeded upstairs without answering. *Id.* As he was preparing to take his trash out to the curb, Mr. Gordon observed Appellant coming down the steps. *Id.*, at 15. Mr. Gordon again inquired as to how Appellant gained access to the house, and Appellant informed Mr. Gordon he used a key. *Id.* Mr. Gordon told Appellant only residents should possess keys and asked whether Appellant had left the key with Ms. Storm. *Id.*, at 16-17. Appellant said he had. *Id.*, at 17. Mr. Gordon, who was unarmed, then opened the door and escorted Appellant to the front door. *Id.*, at 17, 60. Appellant grazed Mr. Gordon and made a motion under his coat, stabbing Mr. Gordon in the inner thigh.

---

[5] At trial, the prosecutor and the witnesses sometimes stated the incident occurred on February 21, 2011 and the 1925(a) opinion references February 21, 2011. *See, e.g.,* N.T., 8/27/2013, at 12; 1925(a) Opinion, 3/26/2014, at 3. The incident, however, occurred on February 12, 2011. *E.g.,* Criminal Complaint, 2/13/2011.

*Id.*, at 17.  Mr. Gordon observed that his pant leg was slashed and tried to run after Appellant.  N.T., 8/27/2013, at 18-19.  After he "felt a warm sensation" in his leg, he returned home and discovered that he was bleeding.  *Id.*, at 19.

Officer Edgar Ruth testified that he responded to the call at the rooming house and found Mr. Gordon "bleeding heavily from his right leg."  N.T., 8/27/2014, at 65.  He used a belt from Mr. Gordon's closet as a tourniquet.  *Id.*

Officer Christina Mellett testified that she drove around the neighborhood with Ms. Stamp searching for Appellant.  N.T., 8/27/2014, at 71.  Officer Mellett found Appellant at a nearby transportation hub and arrested him.  *Id.*, at 72-73.  She recovered a folding pocket knife/boxcutter with blood on the blade from Appellant's jacket pocket.  *Id.*, at 74.

Appellant testified.  Appellant stated he visited Ms. Storm on February 12, 2011 to return her keys, and encountered Mr. Gordon as he came downstairs from Ms. Storm's room. N.T., 8/27/2014, at 84, 81.  He claimed that he told Mr. Gordon he returned the keys, proceeded to walk out of the building, turned around because he "felt weird," and saw Mr. Gordon "coming at me with – it looked like a billy club or a piece of a bat."  *Id.*, at 81.  Appellant then pulled the knife from his pocket, opened it, and said: "Yo, why don't you slow down, let me go out."  *Id.*  Appellant testified that Mr. Gordon proceeded to slide in front of Appellant "like he was going to block [Appellant's] passage from going out."  *Id.*  Mr. Gordon raised the club

and Appellant stabbed Mr. Gordon in the leg. *Id.*, at 87. Appellant also testified that he previously heard Mr. Gordon state: "I already done slumped me somebody before. I ain't got no problem doing it again." *Id.*, at 83. Appellant believed Mr. Gordon meant he previously killed someone and did not have a problem doing it again or was aggressive and had no problem hurting somebody. *Id.*

On August 27, 2013, the trial court found Appellant guilty of aggravated assault,[6] simple assault, REAP, and possession of an instrument of crime. On January 17, 2014, the trial court sentenced Appellant to 26 to 52 months' imprisonment followed by 4 years' probation for aggravated assault, a concurrent sentence of 4 years' probation for possession of an instrument of crime, and a concurrent sentence of two years' probation for REAP. The simple assault conviction merged with aggravated assault for sentencing purposes.

On January 31, 2014, Appellant filed a timely appeal. Appellant filed a timely statement of errors complained of on appeal and a request for an extension of time to file a supplemental statement of errors within 21 days. On March 5, 2014, the court granted the extension, requiring Appellant to file his supplemental statement within 21 days, or by March 26, 2014. On

---

[6] Appellant was charged with aggravated assault, a felony in the first degree, but the court found him guilty of aggravated assault, a felony in the second degree. *See* Information, 3/11/2011; Order of Sentence, 1/17/2014.

March 25, 2014, Appellant filed the statement. On March 26, 2014, the trial court issued its 1925(a) opinion. It addressed only the claim raised in the original 1925(b) statement, i.e., whether there was sufficient evidence to prove aggravated assault, simple assault, possession of an instrument of crime or REAP beyond a reasonable doubt. 1925(a) Opinion, 3/25/2014, at 2. The court stated Appellant did not file a supplemental statement. *Id.* Because Appellant timely filed the supplemental statement, we will address the two issues raised therein, which he also raises on appeal:

> 1. Was not the evidence insufficient to sustain the verdict of guilt on the charges of aggravated assault, a felony of the second degree, simple assault and recklessly endangering another person, as the Commonwealth failed to disprove that [A]ppellant acted in self-defense beyond a reasonable doubt?
>
> 2. Was not the evidence insufficient to sustain the verdict of guilt on the charge of possessing an instrument of crime where the only evidence of intent to employ the weapon criminally was its use in justifiable self-defense?

Appellant's Brief at 3; *see* Supplemental Statement of Errors Complained of on Appeal, at ¶8a-b. Both claims maintain there was insufficient evidence because Appellant acted in justifiable self-defense.

We apply the following standard when reviewing sufficiency of the evidence claims: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772

(Pa.Super.2003), *affirmed*, 870 A.2d 818 (Pa.2005) (quoting ***Commonwealth v. DiStefano***, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." ***Id.***

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Id.*** Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id.*** "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***DiStefano***, 782 A.2d at 582.

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. ***Id.*** Further, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Id.***

Appellant does not dispute that he stabbed Mr. Gordon. Rather, he maintains he acted in self-defense. ***See, e.g.,*** Appellant's Brief at 14. "If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Commonwealth v. Houser***, 18 A.3d 1128, 1135 (2011) (citing ***Commonwealth v. Rivera***, 983 A.2d 1211, 1221 (Pa.2009)). A fact-finder, however, "is not required to believe the testimony of the defendant who

raises the claim." *Id.* (citing **Commonwealth v. Carbone**, 574 A.2d 584, 589 (Pa.1990)).

The prosecution and defense presented different versions of the incident. Mr. Gordon testified that he was unarmed and that, as he escorted Appellant to the door, Appellant stabbed him in the leg. Appellant claimed Mr. Gordon had a "billy club" and Mr. Gordon had previously stated he "slumped" someone. The trial court credited Mr. Gordon's version of events, as it was free to do.[7] **See Commonwealth v. Houser**, 18 A.3d at 1128.

Viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence existed to enable the fact-finder to find every element of the crimes, including that Appellant did not act in self-defense, beyond a reasonable doubt.[8]

Judgment of Sentence affirmed.

_____

[7] In fact, the court found Appellant was not a credible witness. Opinion, 3/26/2014, at 4. We must defer to this determination. **See Commonwealth v. O'Bryon**, 820 A.2d 1287, 1290 (Pa.Super.2003) ("appellate courts must defer to the credibility determinations of the trial court as fact finder, as the trial judge observes the witnesses' demeanor first-hand.")

[8] The Commonwealth maintains Appellant failed to present evidence of a self-defense claim because he conceded Mr. Gordon did not strike him or swing the club, Appellant suffered no injuries, and Appellant did not call for assistance. Appellant's Brief at 11. Further, it claims Appellant cannot state a self-defense claim because he failed to retreat. *Id.*, at 11-12. We will assume, without deciding the issue, that Appellant's testimony, including his claim that Mr. Gordon raised the club, was sufficient to raise a self-defense claim.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/2014