J-S47002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLIN V. CHAVOUS | : | |
| | : | |
| Appellant | : | No. 367 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 8, 2025
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003614-2023

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:               **FILED FEBRUARY 5, 2026**

Colin V. Chavous appeals from the judgment of sentence imposed on January 8, 2025, for his conviction of indecent exposure.[1] Chavous challenges the sufficiency and weight of the evidence, the denial of a request for a search of the victim's cell phone, and the admission of video evidence. After careful review, we affirm.

The trial court set forth the relevant factual and procedural history:

On March 31, 2022, police responded to 512 Fern Street in Darby, Pennsylvania after receiving a report from Kadiatu Kabia that a contractor she hired masturbated in her living room. The contractor was identified as [] Chavous and an arrest warrant was issued. [] Chavous was charged with indecent exposure, simple assault, and harassment.[2] The matter ultimately proceeded to a non-jury trial … on December 9, 2024.

_____

[1] 18 Pa.C.S.A. § 3127(a).

[2] 18 Pa.C.S.A. §§ 3127(a), 2701(a)(3), and 2709(a)(3), respectively.

At the trial, the Commonwealth offered the testimony of Kadiatu Kabia who testified that on March 30, 2023, [Chavous] came to her home to discuss removing a wall in her living room. While there, they began negotiating the cost of the project and whether or not [Chavous] would give her a reduced rate. Ms. Kabia offered to do some of the work herself in exchange for a reduced rate. [Chavous] declined that offer. Ms. Kabia then told the court that [Chavous] said, "There's something else we can do, you can take up your robe." He then began masturbating. The Commonwealth introduced a video exhibit, Exhibit C1, taken on Ms. Kabia's cell phone where Kabia can be heard saying, "I can't believe you just nutted in my dining room." [Chavous] can be seen and heard, responding by saying, "I can't believe that happened either." He then asks for a paper towel to clean up the floor. Ms. Kabia brings a paper towel to him and says, "Clean up your shit." He then says, "I've never done anything like that before."

[The trial] court found [Chavous] not guilty of simple assault and harassment but guilty of indecent exposure. He was sentenced on January 8, 2025 to one year probation. [A] timely notice of appeal was filed on February 3, 2025. An order requiring a 1925[(b)] statement was issued on February 6, 2025 and an extension of time was provided on February 26, 2025. [Chavous], through counsel, filed a 1925[(b)] statement on March 17, 2025[.] …

Trial Court Opinion, 4/10/25, at 1-2 (record citations and unnecessary capitalization omitted).

The trial court filed its Rule 1925(a) opinion on April 10, 2025.

Chavous raises three issues for our review:

1. Whether [Chavous'] conviction on count 1—18 [Pa.C.S.A.] § 3127[(a)]—indecent exposure, was against the weight of the evidence?

2. Whether the Commonwealth presented sufficient evidence at trial to support [Chavous'] conviction on count 1—18 [Pa.C.S.A.] § 3127[(a)]—indecent exposure?

3. Whether the trial court erred in denying [Chavous'] pretrial motion seeking review of the complainant's cell phone either by

way of forensic phone dump or in camera review and erred in its admission of the video (C1) into evidence?

Appellant's Brief, at 5 (unnecessary capitalization omitted).

Chavous does not include a section in his Brief regarding his first issue, the weight of the evidence supporting his conviction. *See* Appellant's Brief, at 15-21. We therefore find it waived. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015) (noting an appellant waives their claim when they "fail[] to expand upon [the] claim in the argument section of [their] brief.").

Turning to Chavous' second claim, he argues the evidence was insufficient to support his conviction of indecent exposure because he did not know and he should not have known that his conduct would cause any offense or alarm. *See* Appellant's Brief, at 16. He believes the victim's actions after he masturbated in her dining room indicated she consented to his behavior. *See id.* at 17.

The Commonwealth argues Chavous' second claim is waived because he did not specify in his Rule 1925(b) statement what element or elements were insufficient. *See* Appellee's Brief, at 11, 12 (citing *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015)). Alternatively, the Commonwealth posits that it presented sufficient evidence that the victim was offended, affronted, and alarmed by Chavous' actions and he certainly should have known "that exposing his genitals and proceeding to masturbate in the home of a potential female client whom he had just met for business purposes, and

who had just rejected his advances, and ejaculating all over her floor, was conduct likely to offend, affront or alarm her." *Id.* at 11. We agree with the Commonwealth that there was sufficient evidence.[3]

Our standard and scope of review regarding sufficiency claims is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Torsunov*, 345 A.3d 339, 346 (Pa. Super. 2025) (citation and italics omitted).

Chavous was convicted of indecent exposure under section 3127(a), which provides "[a] person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know

_____

[3] We decline to find the matter waived as Chavous was convicted of only one charge and the sufficiency claim was therefore not too vague to discern.

that this conduct is likely to offend, affront or alarm." 18 Pa.C.S.A. § 3127(a).

"For purposes of Section 3127, it is sufficient for the Commonwealth to show

that an appellant knew or should have known that his conduct is likely to cause

affront or alarm." ***Commonwealth v. Boyd***, 320 A.3d 151, 155 (Pa. Super.

2024) (citations, brackets, and internal quotation marks omitted).

We find the trial court's thoughtful analysis compelling:

In the instant matter, the Commonwealth presented the testimony of Kadiatu Kabia, who testified that she called [Chavous] on March 29, 202[3] to inquire about him removing a wall in her home. They scheduled a meeting for the next day at her home. He arrived at around 7:55 A.M. Ms. Kabia was still in bed as she had just worked three days of 12-hour shifts. She answered the door in an oversized tee-shirt, shorts, boots, and a robe. She stated she believed she was dressed appropriately enough to accept guests. Ms. Kabia showed [Chavous] the wall she would like removed; he told her it would cost $1,000 per day and take about 20 days to complete, as the wall was loadbearing. She then sat down at her table with [Chavous] to attempt to negotiate a lower price. She offered to do some of the work in exchange for a lower price. He told her that would not be possible as the work required licenses and liability would be implicated.

It was then that his demeanor changed from professional to flirtatious. He told Ms. Kabia, "There's something else we can do, you can take up your robe." Ms. Kabia began backing away and telling [Chavous] she would not do that. He persisted and began lifting his shirt, exposing his torso. She continued backing away from him. He then began taking his pants and boxers partially off, exposing his penis. He told her "you don't even have to touch it, just bend over while I do this." His penis was erect and he began masturbating. She felt violated and creeped out. He ejaculated on her floor and she got him some napkins to clean it up.

While Ms. Kabia testified, the Commonwealth played video clips she recorded on her cell phone during the incident. The videos were admitted as Exhibit C1. In one clip, Ms. Kabia can be heard saying to [Chavous], "I can't believe you just nutted in my living

- 5 -

room." He says, "I can't believe it either. That's never happened to me before."

After the incident, Ms. Kabia testified that she was "paralyzed." She laid on her couch all day and asked other people to be available to care for her children. She was shocked and offended and made it clear she had not consented to the incident.

The above facts are sufficient to establish each element of the crime of indecent exposure. … Ms. Kabia testified credibly that [Chavous] took his penis out in her living room and masturbated in front of her. He asked her to bend over while he masturbated. [Chavous] knew or should have known that those actions would offend, affront, or alarm Ms. Kabia. In fact, she testified that they did offend and alarm her.

The defense set forth their theory that Ms. Kabia consented to the behavior. In support of that theory, the defense cited to the video recorded by Ms. Kabia which showed her communicating with [Chavous] after he ejaculated. At that point, both parties were discussing the removal of the wall again and [Chavous] was still quoting $1,000 a day for the project. Ms. Kabia then says "When you were just jerking off right now … you're not going to charge me $1,000." The implication being that she may have consented to [Chavous'] act in order to get a reduced price. That, however, was not borne out in the evidence. On cross-examination, Ms. Kabia testified credibly that [Chavous] was telling her while he was masturbating that he would work out a deal if she took off her robe and bent over.

It is clear from the evidence that [Chavous] showed his penis to Ms. Kabia and masturbated in front of her after she permitted him in her home to discuss business. [Chavous] suggests that Ms. Kabia consented to his behavior in an effort to get a better price on house repairs. That is an absurd leap based on the evidence. There was no evidence, before, during, or after the act of masturbation that even remotely suggests consent by Ms. Kabia that [Chavous] masturbate in her living room during a business meeting. [Chavous] certainly should have known that this would "offend, affront, or alarm" her. As such, the evidence was sufficient to sustain the verdict of guilty of indecent exposure.

Trial Court Opinion, 4/10/25, at 4-6 (record citations and unnecessary capitalization omitted).

Just as the trial court indicated, there is absolutely no evidence that the victim consented to Chavous' actions. Chavous should have known that his decision to masturbate in a potential client's home would offend, affront, or alarm her. As such, Chavous' sufficiency claim fails.

Finally, Chavous argues the court erred in denying his pre-trial motion seeking either a forensic phone extraction ("phone dump") or an in camera review of the victim's cell phone. **See** Appellant' Brief, at 18. Chavous further argues that, because this motion was denied, and he was unable to confirm whether the victim was telling the truth that the videos she took were only short snippets, the videos should not have been admitted at trial. **See id.** at 19.

The Commonwealth argues the trial court correctly denied the pre-trial motion as the evidence sought to be obtained would be irrelevant, a fishing expedition, and traumatizing for the victim. **See** Appellee's Brief, at 20-21. Regarding the admission of the videos, the Commonwealth asserts there was no error in admission of the videos as they were relevant and everything provided was the full and complete videos taken during the encounter. **See id.** at 22. Furthermore, the Commonwealth notes that, even if the videos were admitted in error, that error was harmless. **See id.** at 23.

We begin with our standard of review regarding Chavous' request for discovery of the victim's cell phone.

> Decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. While the trial court retains the discretion to fashion an appropriate remedy when a party has violated the discovery rules, such discretion is not unfettered. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citations and quotation marks omitted).

Furthermore, our Supreme Court has held that "[u]nless an appellant demonstrates how he was prejudiced by the decision to deny discovery he cannot show an abuse of discretion." *Commonwealth v. Briggs*, 12 A.3d 291, 326 (Pa. 2011).

Chavous has not shown how he was prejudiced by the denial of his discovery request. Notably, the trial court found:

> [T]he defense was not prevented from cross-examining [the victim] about the full extent of the conversation [with Chavous] that was not shown on video. Defense counsel was able to put forth their theory that there may have been conversation caught on video showing consent to [Chavous'] actions. Defense counsel asked Ms. Kabia what she meant when she said on video, "When you were just jerking off right now … you're not going to charge me $1,000," implying that Ms. Kabia consented to the behavior in order to get a reduced price. However, Ms. Kabia explained she was not saying "you're still going to charge me $1000 after I just let you do that?" Instead, she was saying, "I'm not paying you $1,000 after you just masturbated in my living room." So, since defense counsel was still able to put forth their theory of consent, any allegation of error, if found, would be harmless.

- 8 -

With regard to the phone records, defense counsel sought the records to attack [the victim's] credibility as she had represented that she was on the phone with her children during the incident. Counsel wanted to see phone records to show she lied and was not on the phone with her children. The court determined that even if the records were obtained, and even if they showed she was not on the phone with her children, it would not have been enough to undermine [the victim's] credibility. As the Commonwealth pointed out, maybe she was lying to [Chavous] at the time that she was on the phone because it made her feel more protected if [Chavous] believed there were other people watching or listening. Frankly, [the trial] court believes that to be a more credible implication than [Chavous'] suggestion that it somehow supports his contention that the victim consented to a stranger masturbating in front of her for a "better deal."

Furthermore, defense counsel could have subpoenaed the phone records. It is true that there was a bit of a roadblock in not knowing the cellphone provider, however if counsel had taken the [victim's] phone number, he could have subpoenaed each major provider for the phone records. Finally, whether or not [the victim] was on the phone with her children at the time did not have any impact on [Chavous'] behavior that day. He knew or should have known that his behavior would "offend, affront, or alarm." The evidence showing Ms. Kabia did not consent to the behavior and was, in fact, offended by the conduct was proven beyond a reasonable doubt and an attack on her credibility simply showing she may not have been on the phone with her children would not have changed that outcome.

Trial Court Opinion, 4/10/25, at 9-10 (record citations omitted). We discern no abuse of discretion.

Chavous was permitted to question the victim's credibility and present his narrative of what occurred. The trial court, sitting as factfinder, found the victim credible and indicated that position would not have changed even if the victim was lying about being on the phone with her children. We are bound by the trial court's credibility findings as it observed the victim's demeanor while

- 9 -

testifying. ***See Commonwealth v. O'Bryon***, 820 A.2d 1287, 1290 (Pa. Super. 2003) ("[I]t is axiomatic that appellate courts must defer to the credibility determinations of the trial court as fact finder, as the trial judge observes the witnesses' demeanor first-hand.") (citation omitted). Because Chavous was able to present the same defense he otherwise would have presented and he makes no claim of prejudice, we find this claim meritless.

Finally, Chavous argues the trial court erred in admitting the videos because the court did not force the Commonwealth to disclose the victim's cell phone records. ***See*** Appellant's Brief, at 18. It appears Chavous is arguing the videos were not properly authenticated. ***See id.***

Our standard of review regarding the admission of evidence is similar to the discovery standard noted above:

> When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Jackson***, 283 A.3d 814, 817 (Pa. Super. 2022) (brackets and citation omitted).

Pennsylvania Rule of Evidence 901(a) provides how evidence may be authenticated: "Unless stipulated, to satisfy the requirement of authenticating

or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). "Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient [authentication]." *Jackson*, 283 A.3d at 818 (citations omitted).

The victim testified to how she created the videos. *See* N.T. Trial, 11/13/24, at 29-32. She explained she was trying to record Chavous without him knowing while also answering calls from her children. *See id.* at 32-34. This led to the creation of three short video clips. The trial court found her testimony credible and certainly this testimony is sufficient to support a finding that the item is what the proponent claims it is. *See* Trial Court Opinion, 4/10/25, at 9; Pa.R.E. 901(a). We cannot find any abuse of discretion in admission of the videos. Therefore, the final claim is meritless and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/5/2026

- 11 -